## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TAYLOR DEGGS, ET AL.**                                              **CIVIL ACTION NO.**

**VERSUS**

**19-406-BAJ-EWD**

**FIVES BRONX, INC., F/K/A**
**ABBEY INTERNATIONAL, LTD., F/K/A**
**ABBEY ETNA MACHINE CO., ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 3, 2020.

*/s/ Erin Wilder-Doomes*
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TAYLOR DEGGS, ET AL.**                                                    **CIVIL ACTION NO.**

**VERSUS**

**19-406-BAJ-EWD**

**FIVES BRONX, INC., F/K/A
ABBEY INTERNATIONAL, LTD., F/K/A
ABBEY ETNA MACHINE CO., ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand ("the Motion"),[1] filed by Taylor Deggs, individually and as tutrix on behalf of the minor children S.L.D.D. and S.L.D.S. (collectively, "Plaintiff"). Defendants Fives Bronx, Inc. ("Five Bronx"),[2] Rockwell Automation, Inc., ("Rockwell"),[3] and APTIM Maintenance, LLC ("APTIM") have filed opposition memoranda.[4] For the reasons set forth herein, it is recommended[5] that the Motion[6] be denied, that Plaintiff's claims against Defendant Richard S. Housley ("Housley") be dismissed without prejudice. In the event this recommendation is adopted, it is also recommended and that this matter be referred for a scheduling conference.[7]

---

[1] R. Doc. 17.

[2] Plaintiff alleges that Fives Bronx was formerly known as "Abbey International Ltd.," which was formerly known as "Abbey Etna Machine Co." R. Doc. 1-2, p. 8, ¶ 2.

[3] Plaintiff and Rockwell contend that Rockwell conducts business as "Allen-Bradley." R. Docs. 1-2, p. 9, ¶ 3 and R. Doc. 5.

[4] R. Docs. 20-22.

[5] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to de novo review." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016). A motion for leave to amend is not among the motions expressly excluded from direct ruling by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). Further, although the Fifth Circuit has not ruled on the issue, the weight of authority appears to be that motions for leave to amend are generally considered nondispositive in nature. *See*, *e.g.*, *Bona Fide Demolition and Recovery, LLC v. Crosby Construction Co. of La., Inc.*, 07-3115, 2010 WL 4176858, *1 (E.D. La. Oct. 20, 2010) (collecting cases).

[6] R. Doc. 17.

[7] The scheduling conference was canceled to permit resolution of the jurisdictional issues. R. Doc. 15.

## I.  Background

This is a civil action involving claims for damages based upon the injuries allegedly sustained by, and the wrongful death of, Stephen Deggs ("Decedent"), which occurred on September 13, 2018 at a Stupp Corporation facility located in Baton Rouge, Louisiana. Decedent was crushed when he became wedged between a pipe and a cutting machine, which resulted in significant injuries that ultimately caused Decedent's death (the "Accident").[8]

On or about March 27, 2019, Plaintiff, who is Decedent's spouse, filed an Original Petition for Wrongful Death and Survival Action ("Petition"), individually and as tutrix on behalf of the minors, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge against Fives Bronx; Abbey Etna Company, Ltd., ("Abbey Ltd."), whom Plaintiff contends manufactured the conveyor moving the pipe and the cutting machine; Rockwell, whom Plaintiff contends manufactured the control panel that controlled the conveyor; APTIM, who Plaintiff alleges provided maintenance, repair and inspection services on the equipment at the facility; and Housley who was the supervisor for APTIM responsible for overseeing APTIM'S duties at the facility.[9]

Plaintiff asserts a claim under Louisiana's Products Liability Act against Fives Bronx, Rockwell, and Abbey Ltd., and asserts a general negligence claim against all Defendants as follows: "The incident that injured and killed Mr. Deggs amounts to negligence and the creation of a hazardous condition caused by the fault of the Defendants...," followed by a listing of twelve types of alleged failures, including failure to warn, inspect, repair, and maintain.[10]

On June 20, 2019, APTIM removed the matter to this Court asserting that diversity jurisdiction exists under 28 U.S.C. § 1332.[11] With respect to the amount in controversy, Plaintiff's Petition avers

---

[8] R. Doc. 1-2, p. 10, ¶¶ 13-14.

[9] R. Doc. 1-2, pp. 8-9, 11, ¶¶ 2, 3, 6, and 15.

[10] R. Doc. 1-2, pp. 11-13, ¶¶ 16-24.

[11] R. Doc. 1, ¶¶ 1, 3.

that Plaintiff "seeks far in excess of $75,000," based upon the "severe and permanent injuries" which caused "pre-death…physical pain and suffering [and] mental pain" to Decedent and ultimately Decedent's demise. Plaintiff also seeks damages for loss of consortium with Decedent.[12] Considering Plaintiff's unambiguous statement that she seeks "far in excess of $75,000," and the nature of the claims arising out of the injuries to, and death of, Decedent, the Notice of Removal sufficiently established that the amount in controversy exceeds $75,000, exclusive of interest and costs.

With respect to diversity of the parties, the Notice of Removal properly pled that APTIM is a citizen of Delaware and Texas, Fives Bronx is a citizen of Ohio, and Rockwell is a citizen of Delaware and Wisconsin.[13] However, the Notice of Removal was deficient with respect to the pleading of the citizenship of Plaintiff and Abbey Ltd. Accordingly, on July 5, 2019, APTIM was ordered to substitute its Notice of Removal with an Amended Notice of Removal that properly pled the citizenship of these parties.[14] On July 18, 2019, the Court granted APTIM's Motion to Substitute an Amended Notice of Removal ("Amended Notice"), which properly pled the Louisiana citizenship of Plaintiff, and thus also the citizenship of the minor children over whom Plaintiff is tutrix, which Plaintiff does not dispute.[15] As discussed more fully below, the Amended Notice also properly established the diverse citizenship of George A. Isaac, III (California), Kenneth C. Dippman (Ohio),

---

[12] R. Doc. 1, ¶ 36, *citing* R. Doc. 1-2, p. 10, ¶ 10, p. 13, ¶¶ 25-26.

[13] *See* R. Doc. 1, ¶ 15 (alleging APTIM is a limited liability company with one member, a Delaware corporation with its principal business office in Texas); ¶ 16 (alleging Fives Bronx is an Ohio corporation with its principal business office in Ohio); and ¶ 17 (alleging Rockwell is a Delaware corporation with its principal business office in Wisconsin).

[14] *See* the Court's July 5, 2019 Order at R. Doc. 14, pp. 4-5 regarding the deficiencies in the pleading of the citizenship of Plaintiff and Abby Ltd.

[15] *See* R. Doc. 18 *granting* R. Doc. 16; R. Doc. 1, ¶ 12 (pleading Plaintiff's Louisiana citizenship *and citing* Plaintiff's Petition at R. Doc. 1-2, p. 10, ¶ 10, wherein Plaintiff refers to herself as a Louisiana citizen) *and see* R. Doc. 1-2, pp. 47-52 (Affidavit of Quality Investigative Group regarding public record information indicating Plaintiff is a Louisiana citizen). With respect to the minors, this Court has previously explained that, "'[s]ince most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents,'" and that, "'[w]hen determining a minor's domicile, courts look to the domicile of the minor's guardian if the minor lives with her guardian.'" *Champagne v. Parrish*, No. 16-610, 2016 WL 7031331, at *3 (M.D. La. Nov. 7, 2016) *citing Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (*citing Yarborough v. Yarborough*, 290 U.S. 202, 211 (1933)) and *Daffern v. State Auto Prop. & Cas. Ins. Co.*, No. 10-1211, 2011 WL 1085664, at *2 (W.D. La. Mar. 18, 2011).

and Frank E. Glover (Michigan), the three underlying individual members of the now-defunct Abbey Ltd., which was an Ohio limited liability company.[16] The sole remaining defendant, Housley, is undisputedly a Louisiana citizen.[17] However, APTIM contends that Housley was fraudulently joined to defeat diversity, attaching Housley's declaration under penalty of perjury ("Declaration").[18]

On July 16, 2019, Plaintiff filed the instant Motion, wherein she contends that remand is proper based on the following: Rockwell waived its right to removal by filing a partial exception of no cause of action against Plaintiff in the state court proceedings; Defendants failed to plead the citizenship of Abbey Ltd., so complete diversity has not been established;[19] and this Court lacks subject matter jurisdiction because Housley is a properly joined non-diverse defendant.[20]

## II. Law and Analysis

### A. Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[21] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[22] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[23] In removed actions, diversity of citizenship must exist both at the time

---

[16] R. Doc. 1, ¶¶ 18-21 and R. Doc. 1-2, pp. 44-52.

[17] R. Doc. 1, ¶ 22; R. Doc. 1-2, pp. 9-10, ¶¶ 5, 10.

[18] R. Doc. 1, ¶¶ 22-34; R. Doc. 1-2, pp. 36-38.

[19] R. Doc. 17-1.

[20] R. Doc. 17-1, pp. 8-12.

[21] 28 U.S.C. § 1441(a).

[22] 28 U.S.C. § 1332(a)-(a)(1).

[23] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

of filing in state court and at the time of removal to federal court.[24] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[25] The removing party has the burden of proving federal diversity jurisdiction.[26] Remand is proper if at any time the court lacks subject matter jurisdiction.[27]

### B. The Amended Notice of Removal Establishes that Abbey Ltd. is Diverse from Plaintiff

Plaintiff argues that the citizenship of Abbey Ltd. has not been properly pled, and therefore, it has not been shown that complete diversity exists.[28] However, and as noted by Defendants, in response to the Court's July 5, 2019 *sua sponte* Order, APTIM filed its Amended Notice of Removal, which cured the pleading deficiencies raised in the Order regarding Abbey Ltd.[29] In particular, APTIM sufficiently pled that Abbey Ltd. (which Defendants also contend is improperly joined),[30] is a (now-dissolved) Ohio limited liability company that has three individual members, *i.e.*, Issacs, Dippman, and Glover, who are domiciled in California, Ohio and Michigan, respectively, and diverse from Plaintiff.[31] A defendant is free to amend a notice of removal within the thirty day period as set forth in § 1446(b) or, after that time period, pursuant to 28 U.S.C. § 1653 to cure defective jurisdictional allegations.[32] Since APTIM cured the pleading deficiencies in the Notice of Removal pursuant to this Court's Order, Plaintiff's challenge to removal on this basis is meritless.

---

[24] *Coury v. Prot*, 85 F.3d 244, 248-49 (5th Cir. 1996) (citation omitted).

[25] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

[26] *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

[27] *See* 28 U.S.C. § 1447(c).

[28] R. Doc. 17-1, pp. 15-17 *and see* the Order explaining the deficiencies at R. Doc. 14.

[29] R. Docs. 14, 16, 18, *and see* Opposition memoranda at R. Doc. 20, pp. 8-9; R. Doc. 21, p. 9; and R. Doc. 22, p. 7.

[30] R. Doc. 20, pp. 8-9.

[31] R. Doc. 1, ¶¶ 18-21 and R. Doc. 1-2, pp. 44-52 *and see Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (The citizenship of a limited liability company is determined by the citizenship of all of its members.)

[32] *See Moody v. Comm. Ins. Co. of Newark, NJ*, 753, F.Supp. 198,199 (N.D. Tex. Dec. 6, 1990)

5

## C. Rockwell Did Not Waive the Right to Consent to Removal

APTIM filed consents to removal by Fives Bronx and Rockwell with the Notice of Removal.[33] Plaintiff argues that Rockwell waived its right to remove and/or to consent to removal because Rockwell filed a partial exception of no cause of action in the state court, seeking dismissal of Plaintiff's negligence claim, thereby submitting the claim to the state court for adjudication.[34] Rockwell argues that its exception of no cause of action only sought dismissal of one of Plaintiff's claims and was filed only one day before removal. Further, the exception was not ruled upon or subject to further prosecution by Rockwell in state court.[35] Rockwell appears to argue that the short period of time between the filing of the exception and the removal refutes that Rockwell had the "clear and unequivocal" intent to waive removal or that it was "experimenting" with this case in state court before removal. Rockwell contends that the instant facts are analogous to those in *Murphy v. Alcatel-Lucent USA, Inc.*, wherein the *Murphy* court rejected the argument that the removing defendant waived is right to removal by filing state court exceptions and requests for hearing.[36] Rockwell argues that Plaintiff's reliance on *Tedford* is misplaced because the *Tedford* court found that the removing defendant did not waive removal, despite taking more actions in the state court than Rockwell,[37] and that Plaintiff's other authority is distinguishable as involving dispositive motions seeking adjudication on the entire case on the merits.[38]

---

[33] R. Doc. 1-2, pp. 39-41. APTIM avers that consent was not required from the improperly joined Housley and the improperly joined and unserved Abbey Ltd. R. Doc. 1, ¶¶ 42-43.

[34] R. Doc. 17-1, p. 17, *citing Tedford v. Warner-Lambert Co.,* 327 F.3d 423, 428 (5th Cir. 2003) (*superseded by statute on other grounds*) and *Johnson v. Heublein, Inc.,* 227 F.3d 236, 239, 244 (5th Cir. 2000) (other case citations omitted).

[35] R. Doc. 22, pp. 2-6.

[36] R. Doc. 22, pp. 2-4, *citing* No. 15-5566, 2016 WL 3159111, *1 (E.D. La. June 7, 2016).

[37] R. Doc. 22, p. 4, *citing* 327 F.3d at 428.

[38] R. Doc. 22, pp. 4-5. *See* the other opposition memoranda at R. Doc. 20, pp. 9-10 and R. Doc. 21, p. 9.

"A defendant may waive its right to removal 'by proceeding to defend [an] action in state court or otherwise invoking the processes of that court.'"[39] "Waiver of the right of removal is intended to preclude a defendant from 'experimenting' with a case in state court prior to removing it to federal court, where the defendant then has a second opportunity at re-litigating any adverse decisions of the state court."[40] To defeat the right to remove, "the intent to waive must be clear and unequivocal"[41] and generally, "the filing in state court of a pleading which asserts defenses, without further action on the part of the defendant resulting in a decision on the merits of such defenses, does not constitute a waiver of removal."[42] Here, although Rockwell filed one exception in state court, *it was filed the day before removal* and there was no ruling on the exception prior to the filing of the Notice of Removal. In *Johnson*, this Court declined to find that the removing defendants waived their right to removal despite having filed answers and exceptions in the state court, partly because the exceptions had not been ruled upon prior to removal.[43] *See also Murphy*, holding that the removing defendants' filing of an exception before removal did not amount to a waiver of the right to removal. For the same reasons, Rockwell's filing of an exception one day before removal that was not resolved by the state court prior to removal does not amount to waiver by Rockwell.[44]

---

[39] *Johnson v. Packaging Corp. of America,* No. 18-613, 2019 WL 1271053, at *8 (M.D. La. Feb. 27, 2019), *report and recommendation adopted*, No. 18-613, 2019 WL 1271009 (M.D. La. Mar. 19, 2019) *citing Bourdier v. Diamond M. Odeco Drilling, Inc.*, No. 93-3667, 1994 WL 25526, at *1 (E.D. La. Jan. 24, 1994) (*quoting Brown v. Demco Inc.*, 792 F.2d 478, 481 (5th Cir. 1986)). *See also Murphy,* 2016 WL 3159111, at *4 (same).

[40] *Bourdier*, 1994 WL 25526 at *1 (*citing Carpenter v. Illinois Cent. Gulf R. Co.*, 524 F.Supp. 249, 251 (M.D. La. 1981); *Kiddie Rides USA, Inc. v. Elektro–Mobiltechnik GMBH*, 579 F.Supp. 1476, 1480 (C.D. Ill. 1984); *Brown*, 792 F.2d at 482 (permitting defendants to remove after having "tested state-court waters" gives them second opportunity to forum shop and further delay suit).

[41] *Bourdier*, 1994 WL 25526 at *1 (*citing Morgan Dallas Corp. v. Orleans Parish School Bd.*, 302 F.Supp. 1208, 1209 (E.D. La. Aug. 27, 1969)).

[42] *Bourdier*, 1994 WL 25526, at *1 (citations omitted).

[43] *Johnson*, 2019 WL 1271053, at *8.

[44] *See Murphy*, 2016 WL 3159111, at * 4 (rejecting argument that defendant waived its right to remove by filing exceptions to the petitions along with a motion and proposed order to have the exceptions set for hearing in state court). *Tedford*, relied on by Plaintiffs, supports Rockwell's right to consent to removal and Plaintiff's other Fifth Circuit authority is distinguishable, *see, e.g., Johnson v. Heublein, Inc.*, wherein the Fifth Circuit found that some of the defendants waived their right to removal when they failed to remove the case during the initial 30-day removal period for lack of obtaining consent of all defendants *and* filed motions to dismiss and a motion for summary judgment, the former of which was ruled

7

### D. Housley was Improperly Joined Under *Canter*

If Housley is properly joined, then as a Louisiana citizen, his presence in this action precludes removal and the Motion to Remand should be granted.[45] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[46] "'[A]ny contested issues of fact and any ambiguities of state law must be resolved' in favor of remand,"[47] and "[a]ny doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[48]

The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[49] As to the second method, the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[50] Defendants do not assert that there has been fraud in the pleading of jurisdictional facts related to Housley.[51] Accordingly, the

---

upon by the state court prior to the plaintiff's filing of an amended complaint that raised an entirely new cause of action, which again gave rise to removal under the "revival" exception in 28 U.S.C. § 1446(b). 227 F.3d at 244.

[45] 28 U.S.C. §1441(b)(2).

[46] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[47] *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (*quoting Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). *See also Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) ("Any contested issues of fact and any ambiguities of state law must be resolved in [plaintiff's] favor. The burden of persuasion on those who claim fraudulent joinder is a heavy one.").

[48] *Bartel v. Alcoa Steamship Co.*, No. 14-251, 14-252, 64 F.Supp.3d 843, 847 (M.D. La. Dec. 4, 2014) (*citing Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

[49] *Smallwood.,* 385 F.3d at 573 (*quoting Travis*, 326 F.3d at 646-47).

[50] *Id.*

[51] *See* R. Doc. 1, ¶ 28 ("In this case, the Plaintiff's allegations against Housley fail the *Twombly-Iqbal* Rule 12(b)(6) standard….[I]t is clear that Plaintiff does not have a reasonable basis for recovering against Housley"); ¶ 29 ("There is no reasonable basis for the district court to expect or predict that Plaintiff may ever actually be able to recover against [Housley]…Accordingly, Plaintiff's Petition does not survive the Rule 12(b)(6) standard."). *See also* R. Doc. 20, p. 3 and R. Doc. 21, pp. 3-5 (articulating the test for fraudulent joinder based on the second prong, *i.e.,* the inability of the plaintiff to establish a cause of action against the non-diverse party in state court) *and* R. Doc. 17-1, p. 6 (*citing* R. Doc. 1, ¶ 31).

undersigned considers whether Plaintiff has a reasonable basis of recovery under state law against Housley.

A court may resolve the issue of whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. "The court may conduct a Rule 12(b)(6) analysis, looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[52] The Fifth Circuit has cautioned that such summary inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."[53]

### i. Scope of Allegations to be Considered

As a threshold matter, the parties disagree as to what allegations this Court should consider when determining whether Plaintiff has stated a claim against Housley. As explained above, APTIM attached Housley's Declaration to the Notice of Removal, and Defendants argue that Plaintiff has not disputed the Declaration, which should be considered in the resolution of the instant Motion under the second tier of the *Smallwood* analysis.[54] In contrast, Plaintiff argues that only the Petition should be considered and, because it is clear the Petition states a claim against Housley, summary inquiry is

---

[52] *Smallwood*, 385 F.3d at 573.

[53] *Id.* at 573-74. *See also*, *id.* at n. 12 ("For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true."). *See also African Methodist Episcopal Church*, 756 F.3d at 793 ("A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder. The federal court's inquiry into the reasonable basis for the plaintiff's state court recovery is a 'Rule 12(b)(6)-type analysis,' although the court retains discretion to pierce the pleadings and conduct summary proceedings….").

[54] R. Doc. 21, pp. 5-7 *and see* R. Doc. 20, p. 6-7 and R. Doc. 22, p. 7.

unnecessary.[55] Plaintiff also contends that a summary inquiry is improper because there are no discrete facts at bar that are indisputably false and easily disproved. According to Plaintiff, Housley's Declaration does not dispute that he was an APTIM shift supervisor at the time of the Accident, but rather, challenges disputed facts as to the extent of Housley's involvement in Decedent's death and his knowledge of problems with the relevant equipment, which is an attempt to disclaim liability.[56]

When a plaintiff's allegations *can survive a Rule 12(b)(6) challenge*, the district court may, in some circumstances, "'pierce the pleadings and conduct a summary inquiry' before slamming the door on a claim of improper joinder."[57] Here, because Plaintiff's allegations against Housley cannot survive a Fed R. Civ P. 12(b)(6)-type analysis, it is not necessary to consider "summary-judgment type" evidence, *i.e.,* Housley's Declaration.

### ii. Individual Liability of Housley Under *Canter*

"When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims."[58] "Under Louisiana law, a court may hold a corporate officer or employee individually liable for injuries to third persons under certain circumstances."[59] "This 'liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship.'"[60] "If the

---

[55] R. Doc. 17-1, pp. 12-15.

[56] R. Doc. 17-1, pp. 13-15 *citing Smallwood*, 385 F.3d at 574 and *McKee v. Kansas City Southern Ry. Co.*, 358 F.3d 329, 336 (5th Cir. 2004). Plaintiff alternatively argues that, even if the Declaration is considered, it does not satisfy Defendants' burden of negating the possibility of Housley's liability because it does not refute all of Plaintiff's allegations, particularly with respect to Housley's failure to properly inspect the relevant equipment and make repairs. R. Doc. 17-1, p. 15 (citations to authority omitted).

[57] *Pitman v. Crane Co.*, No. 13-83, 2013 WL 1403326, at *3 (E.D. La. April 5, 2013) (emphasis added).

[58] *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, No. 10-684, 2013 WL 1296678, at *2 (M.D. La. March 28, 2013) (*subsequent history omitted*) (*citing LeMeilleur v. Monumental Life Ins. Co.*, 419 Fed. Appx. 451, 453 (5th Cir. 2011) and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[59] *Kemp v. CTL Distribution, Inc.*, 440 Fed. Appx. 240, 245 (5th Cir. 2011) (unpubl.) (*citing Canter v. Koehring*, 52,870 (La. 09/24/73), 283 So.2d 716 (*superseded on other grounds by statute*)).

[60] *Kemp,* 440 Fed. Appx. at 245 (*citing Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) and *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994)).

elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable."[61] Conversely, when considering the sufficiency of allegations purporting to state a claim for an individual employee's personal liability, "[t]he Court is only concerned…[with] whether a viable claim may be made against [the defendant employee] personally and not whether [the employer] may be held vicariously liable for the action of its employees."[62] As explained by the Fifth Circuit, "[v]icarious liability is not a revolving door. In certain situations, an employer may be held liable for the negligent acts of its employees…but *Canter* does not attach liability to a managerial employee absent breach of a duty personally owed by the employee to third parties."[63]

"Under Louisiana law, an employee is personally liable if (1) the employer owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care."[64] "However, a defendant-employee's 'general administrative responsibility' is insufficient to impose personal liability."[65] "In order for a corporate officer to be held liable for purported personal fault or negligence which arises out of a breach of duty, that person must have some personal contact with

---

[61] *Ford*, 32 F.3d at 936 (*citing H.B. Buster Hughes, Inc. v. Bernard*, 56,001 (La. 09/05/75), 318 So.2d 9, 12).

[62] *Hornsby v. AlliedSignal, Inc.*, No. 96-3347, 961 F.Supp. 923, 930 (M.D. La. Jan 15, 1997). *See also Haynes v. Healthcare Services Group, Inc.*, No. 13-649, 2014 WL 2769080, at *2 (M.D. La. May 30, 2014) ("To begin, vicarious and personal liability are not antithetical. 'If the elements for imposing liability on the corporate employee are met, it does not matter that the corporation might also be [vicariously] liable.' *Ford*, 32 F.3d at 936.").

[63] *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed. Appx. 911, 918-19 (5th Cir. 2009).

[64] *Moore v. Manns*, 732 F.3d 454, 456-57 (5th Cir. 2013) (*citing Canter*, 283 So.2d at 721).

[65] *Moore*, 732 F.3d at 457 (affirming district court's denial of motion to amend to add non-diverse employees and agreeing that plaintiff's "proffered amendment relied on the proposed parties' general responsibilities to oversee safety rather than on evidence of personal fault, as required to trigger individual liability under Louisiana law.").

and responsibility towards the injured employee."[66]  "A supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'"[67]

Per the Petition, Plaintiff alleges that Decedent and a co-worker used cutting machine equipment and a conveyor manufactured by Fives Bronx and Abbey Ltd. to crush test a pipe. Decedent's co-workers used a control panel manufactured by Rockwell to operate this equipment. While performing the job, Decedent was crushed by the pipe against the cutting machine.[68] Relevant to the joinder issue, the only allegation specific to Housley is as follows:

> Aptim was a company who provided maintenance, repair, and inspection services on the equipment at the subject facility. Upon information and belief, this included repair and maintenance work on the subject equipment involved in the underlying incident. Additionally, **Defendant Housley was the supervisor responsible for overseeing and performing maintenance, repair and inspection services on equipment at the subject facility. Defendant Housely (sic) and Defendant Aptim failed to adequately inspect and repair the subject equipment such that it was in an adequate safe working manner prior to the accident.**[69]

Plaintiff then generally alleges a claim of negligence in the Petition against "all Defendants:"

> The incident that injured and killed Mr. Deggs amounts to negligence and the creation of a hazardous condition caused by the fault of the Defendants. Specifically, the incident sued on herein was caused by negligence of Defendants, which negligence consisted more particularly, but not exclusively of:
> a. Failing to provide adequate warning of hazards associated to the equipment;
> b. Failing to adequately inspect the equipment;
> c. Failing to adequately repair the equipment;
> d. Failing to adequately maintain the equipment;

---

[66] *Esco v. Smith*, 84-1930 (La. 5/14/85), 468 So.2d 1169, 1175. *See also Canter*, 283 So.2d at 721 ("…personal liability cannot be imposed upon the…employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.").

[67] *Ford*, 32 F.3d at 939 (non-diverse plant manager properly joined in suit arising out of reactor explosion at a fertilizer plant where conflicting affidavits, viewed in the light most favorable to plaintiffs, raised a question of whether the plant manager had actual knowledge of a leak in the reactor prior to the explosion).

[68] R. Doc. 1-2, pp. 10-11, ¶¶ 14-15 *and see* R. Doc. 17-1, pp. 2-3.

[69] R. Doc. 1-2, p. 11, ¶ 15.

>   e.  Failing to provide adequate warning of hazards associated to the control panel;
>   f.  Failing to adequately inspect the control panel;
>   g.  Failing to adequately repair the control panel;
>   h.  Failing to adequately maintain the control panel;
>   i.  Failing to properly instruct its employee;
>   j.  Vicarious liability for the acts of its employees;
>   k.  Failing to safely and adequately design the equipment and control panel; and
>   l.  Failing to adequately supervise and manage their employees.[70]

Finally, Plaintiff alleges in the Petition that:

> Defendants owed a duty consistent with the above, and breached those duties in the underlying incident. Additionally, Mr. Deggs sustained his injuries because Defendants negligently acted or failed to act without regard for the safety of Mr. Deggs, which was a cause in fact and legal cause of Mr. Deggs's injuries and death and the damages sought in this case. As a result, [Plaintiff] suffered actual damages in excess of the jurisdictional limits of this Court.[71]

Plaintiff argues in brief that Defendants have failed to carry the heavy burden of establishing that Housley was improperly joined because, *per the above allegations*, Plaintiff has sufficiently alleged a viable negligence claim that Housley is personally liable for breach of the duties delegated to him and personally owed by him for not maintaining, repairing, and inspecting the equipment.[72] Defendants contend that Plaintiff has failed to sufficiently allege any facts to tie Housley to the Accident, to show that Housley was personally delegated or owed any duties to Decedent, or to show that Housley breached any such duties, as required under *Canter*. Rather, Defendants argue that Plaintiff has only alleged that Housley had only general administrative duties and Plaintiff has

---

[70] R. Doc. 1-2, p. 11, ¶ 16.

[71] R. Doc. 1-2, p. 12, ¶ 17.

[72] R. Doc. 17-1, pp. 8-12.

13

"lumped" her claims against all the Defendants together, which does not give rise to personal liability under *Canter*.[73]

Plaintiff's allegations fail to state a claim against Housley for personal liability. The allegation that Housley "failed to adequately inspect and repair the subject equipment such that it was in an adequate safe working manner prior to the accident," is the sort of conclusory allegation that this Court is not required to accept.[74] Plaintiff does not allege that Housley had any knowledge of a hazardous condition, or even prior problems or issues with the equipment such that Housley was on notice of any potential problems, malfunctioning, or the need for maintenance, nor does the Petition allege that Housley caused the unsafe condition.[75] Plaintiff does not allege that the equipment at issue had problems existing for years or that Plaintiff is seeking to challenge "broad scale" safety issues separate from the supervision of Decedent's activities on September 13, 2018.[76] Plaintiff has not

---

[73] R. Doc. 21, pp. 2-3, 6-7; R. Doc. 20, pp. 4-6; and R. Doc. 22, p. 7. APTIM also argues that Plaintiff has not alleged that Housley acted intentionally or outside the scope of his employment so as to preclude APTIM's vicarious liability. R. Doc. 21, p. 8.

[74] R. Doc. 1-2, p. 11, ¶ 15.

[75] *See Giles v. Wal-mart Louisiana, LLC*, No. 16-2413, 2016 WL 2825778, at *4 (E.D. La. May 13, 2016) ("Plaintiff does not allege that Jabbia personally knew or actively contributed to any alleged unsafe conditions. Plaintiff's allegation that all Defendants 'had actual or constructive knowledge' of the allegedly dangerous condition on the premises is a conclusory allegation that the Court is not required to accept and it does not amount to an allegation that Jabbia personally knew of the allegedly dangerous hole in the parking lot."); *Gros v. Warren Properties, Inc.*, No. 12-2184, 2012 WL 5906724, at *8 (E.D. La. Nov. 26, 2012) ("Plaintiff makes no allegation that Bodine was personally responsible for the maintenance and repair of the common elements of the condominium. Moreover, although Plaintiff alleges that Warren and its agents knew of the allegedly defective condition of the lighting, this is a conclusory allegation that the court is not required to accept, and it does not amount to an allegation that Bodine personally knew of the allegedly defective condition of the emergency back-up lighting.").

[76] *See Delorimier v. Payless Shoe Source, Inc.*, No. 16-13961, 2016 WL 6518864 (E.D. La. Nov. 3, 2016) (Plaintiff's allegation that store manager had a duty to maintain a safe premises and should have known of a 3-4" height variance in sidewalk that existed for years was sufficient under *Canter*); *Davis v. Omega Refining, LLC*, No. 15-518, 2015 WL 3650832 (E.D. La. June 11, 2015) (denying motion to dismiss plant manager in toxic tort case related to operation of oil recycling plant where plant manager testified in deposition that "she was a liaison for the plant with the Louisiana Department of Environmental Quality" and plaintiffs argued they had stated a cause of action against plant manager because "she knowingly allowed the emissions of noxious chemicals and odors into the surrounding communities, and she was designated by Vertex as the 'Responsible Official' with authority to sign forms submitted to the Louisiana Department of Environmental Quality."); *Bryant v. Exxon Mobil Corp.*, No. 10-532, 2011 WL 3163147, at *5 (M.D. La. May 19, 2011) (executive officers who were allegedly delegated responsibility to provide proper supervision and warnings and who allegedly "knew or should have known of the unreasonably dangerous exposures of plaintiff to toxic substances" including asbestos were properly joined. Court noted that the allegations involved exposure over a long period of time and implicated "broad scale issues over which defendants are alleged to have had responsibility and which are not sufficiently addressed by defendants' attestations that they were not responsible for supervision of plaintiff's 'day-to-day' activities"). *See also Abram v. EPEC Oil Co.*, 05-0626 (La. App. 4 Cir. 06/28/06), 936 So.2d 209, 213 (executive officers

provided any factual underpinning for her assertion that all Defendants knew of the particular hazard here (such as a previous similar incident or safety complaints).[77] Plaintiff also does not allege that Housley personally provided access to any of the equipment at issue to Decedent, provided any instructions to Decedent or his co-workers on how to use the equipment at issue, or was delegated the responsibility for the foregoing.[78] What Plaintiff alleges is that, because he was a supervisor responsible for overseeing maintenance, repair and inspection of equipment at the facility and an accident occurred, Housley is responsible for the accident. To find Housley liable on the facts as pled would require holding every supervisor or manager in charge of safety responsible for every accident. This is exactly the type of outcome *Canter* and its progeny seek to avoid.[79]

---

held liable in suit arising out of occupational exposure to asbestos where each officer "had some direct duty to provide Mr. Abram with a safe place to work and had some control over the purchase and availability of equipment and supplies"); *Becnel v. Northop Grumman Ship Systems, Inc.*, 09-0982, 2009 WL 5667696 (La. App. 4 Cir. 09/28/09) (same). *But see Sarradet v. Dow Chemical Co.*, No. 14-5, 2014 WL 3513381, at *8 (M.D. La. July 16, 2014) ("[E]ven construing this evidence in favor of the plaintiff's position that Peebles has a duty concerning asbestos safety, the duties described by these documents are at best general administrative responsibilities and duties Peebles owed to all workers he allegedly supervised.").

[77] *See Brown v. White*, 81-3251 (La. 09/07/82), 430 So.2d 16 (only executive who was "closely associated with the daily problems the mechanics encountered with the equipment and machinery" and who had received a prior safety complaint regarding the fan system on which plaintiff was working while he was injured could be held personally responsible under *Canter*). *See also Sarradet*, 2014 WL 3513381 at *7 (Plaintiff's allegation that individual defendants "knew it was substantially certain the plaintiff would suffer from an asbestos-related disease" was conclusory and insufficient to recover under the intentional tort exception to workers' compensation law. "Non-specific allegations have been found insufficient to satisfy the 'substantial certainty' criterion needed to establish an intentional tort.").

[78] *See Kemp*, 440 Fed. Appx. at 246 (terminal manager improperly joined where, although plaintiffs alleged that both the terminal owner and non-diverse manager "failed to 'ensure the [garage] around and in which [decedent] worked prevented his exposure to harmful emissions'" despite the availability of technology to them, plaintiffs did not allege that the employer delegated such responsibility specifically to the manager. The court concluded that "[w]ithout either knowledge of the dangerous condition, or the possibility that [non-diverse manager] was specifically delegated responsibility of inspecting the trailers for [employer] on a daily basis, Plaintiffs cannot show the existence of a personal duty that was breached…."). *See also Long v. International Paper Co.*, No. 16-00430, 2016 WL 6301016, at *2 (W.D. La. Sept. 20, 2016) ("…allegations that an officer had general safety responsibilities are not sufficient."); *Whitehead v. International Paper Company*, No. 16-176, 2016 WL 6272456, at *3 (W.D. La. Sept. 29, 2016) ("Plaintiffs do not allege that IP delegated any duty to oversee the catwalk, its conditions, or Whitehead's work there, to Whiteley. Courts routinely hold that similar allegations are insufficient to establish *Canter* liability.") (*collecting cases; citing*, *inter alia*, *Kemp*, 440 Fed. Appx. at 246).

[79] This Court conducted a similar analysis and reached a similar conclusion in *Roussell v. PBF Consultant, LLC*, 18-899, 2019 WL 2395501 (M.D La. April 15, 2019), *report and recommendation adopted in part, rejected in part,* No. CV 18-899, 2019 WL 2578763 (M.D. La. June 24, 2019)(adopting recommendation for dismissal of non-diverse safety supervisor for refinery where the plaintiff failed to provide more than generalized conclusory allegations regarding

Plaintiff asserts that Housley was personally responsible for overseeing and performing maintenance, inspection and repair on *non-specific* equipment at the subject facility; however, this sort of conclusory allegation based on general responsibilities[80] associated with Housley's duties as a supervisor is insufficient to state a viable claim under *Canter*.[81] Moreover, Plaintiff collectively alleges that "Defendants owed a duty," collectively refers to "Negligence (against all Defendants),"

---

supervisor's duties and failed to allege that supervisor had any particular knowledge as to the hazard). *Roussell* involved the same law firm that is representing Plaintiff in this matter.

[80] Plaintiff's reliance on "general duties" owed by employees are insufficient on their own to establish personal liability under *Canter*. 283 So.2d at 721. *See* R. Doc. 17-1, p. 9, *citing Rando v. Anco Insulations, Inc.*, 2008-1163 (La. 5/22/09), 16 So.3d 1065, 1086 ("There is an almost universal duty on the part of the defendant in a negligence action to use reasonable care to avoid injury to another."). *Rando* is factually distinguishable. In that case, the Louisiana Supreme Court held that the evidence supported a finding that the employer was aware of the presence of asbestos at the job site, aware of the hazardous condition to the plaintiff, and thus owed a duty to the plaintiff. 16 So.3d at 1087, 1093. Next, Plaintiff cites *Mundy v. Department of Health & Human Resources*, 92-3251 (La. 06/17/93), 620 So.2d 811, 813 (plant operators have duties to exercise reasonable care for the safety of others). Notably, in *Mundy*, the plaintiff alleged that her employer, a hospital, breached a duty to prevent an attacker from stabbing her in an elevator because security was inadequate. The Louisiana Supreme Court held that the plaintiff failed to show that the hospital breached a duty to protect her: "We find that plaintiff's evidence of a single criminal incident at the east bank elevators is insufficient to conclude that the security measures undertaken by the Department were unreasonable or inadequate," because "…the record before us does not support a finding that the hospital knew or should have known that the east bank elevators posed an unreasonable risk of harm to anyone using them such that the hospital breached its duty owed to plaintiff when it failed to station security guards in the lobby of the east bank elevator." *Id*. *Ford v. Elsbury*, 32 F.3d 931, 939 (5th Cir. 1994), cited by Plaintiff, is also distinguishable. In that case, the Fifth Circuit considered deposition testimony and affidavits and held that there was employee testimony that reflected that the individual defendants were specifically informed of several prior reactor leaks in the reactor that ultimately caused a plant explosion, to which notice the defendants failed to respond. Plaintiff is correct that this Court has held that, even if an employee only has general administrative duties, she can still be liable, "*if she created or had knowledge of the danger and failed to cure the risk of harm.*" R. Doc. 17-1, p. 11, *citing Williamson v. Aramark Schools Facilities, LLC*, No. 16-118, 2017 WL 5761626, *6 (M.D. La. Oct. 30, 2017), *report and recommendation adopted,* 16-118, 2017 WL 5760897 (M.D. La. Nov. 28, 2017) (emphasis added). In *Williamson,* the complaint specifically alleged that an employee had knowledge of the wet floor that caused the plaintiff's accident and thus was aware of the harm to the plaintiff. In this case, there has been no showing Housley was aware of the potential harm.

[81] *See McKarry v. Dow Chemical Company*, No. 17-556, 2018 WL 2994820, at *6 (M.D. La. May 11, 2018) ("In the instant case, none of the Plaintiff's claims against DeLacerda satisfy the *Canter* criteria for tort liability. In the Petition, Plaintiff alleges that DeLacerda owed several duties with respect to the hopper car involved in Plaintiff's accident, including a duty to train, instruct and supervise their employees in the inspection and periodic maintenance and repair of hopper cars like the one involved in the underlying accident. The performance of these alleged duties, however, would be general responsibility associated with DeLacerda's employment at UTLX Manufacturing, not a duty owed personally by DeLacerda to Plaintiff based on some special or unique relationship. Because the alleged duties of DeLacerda were general administrative responsibilities for the performance of his employment and because Plaintiff has failed to allege any specific personal duties owed by DeLacerda to Plaintiff, Plaintiff has no possibility of recovery against DeLacerda under Louisiana law.") (*citing Ramsay v. Rusnak*, No. 12-614, 2013 WL 4039405, at *6 (M.D. La. Aug. 7, 2013) (concluding that plaintiffs had no possibility of recovery against non-diverse defendant based upon his failure to perform duties that were general responsibilities of his employment); *Jackson v. Syngenta Crop Protection, LLC*, No. 12-581, 2013 WL 3329855, at **3-4 (M.D. La. July 1, 2013) (finding improper joinder of plant nurse and staff industrial hygienist who had general administrative responsibilities to evaluate employees for occupational chemical exposure and owed no personal duty to employees)).

16

and only generally asserts that all Defendants were negligent in the creation of a "hazardous condition" such that they failed to ensure a safe working environment, *i.e.*, failed to provide adequate inspection, repair, and maintenance of the equipment, and failed to provide adequate warnings, training, instruction, and supervision. However, there is no allegation that APTIM delegated any personal duty to Housley to protect Decedent from the specific harm alleged or that Housley acted unreasonably with respect to Decedent as to the use of the specific equipment at issue, so Plaintiff has failed to state a claim of *Canter* liability.[82] The cases cited by Plaintiff involve breaches of personally delegated duties by employees who had knowledge of the particular dangerous condition and/or who caused the dangerous condition, which has not been shown in this case.[83]

### III. Conclusion and Recommendation

Plaintiff's generalized, conclusory allegations against all Defendants collectively and Plaintiff's failure to assert that Housley had particular duties or knowledge related to the specific equipment at issue, are insufficient to state a claim. Plaintiff's claims against Housley should be

---

[82] *See Giles*, 2016 WL 2825778 at *4 ("Plaintiff's allegation that all Defendants 'had actual or constructive knowledge' of the allegedly dangerous condition on the premises is a conclusory allegation that the Court is not required to accept and it does not amount to an allegation that Jabbia personally knew of the allegedly dangerous hole in the parking lot."); *Gros,* 2012 WL 5906724, at *8.

[83] *See* R. Doc. 17-1, p. 10, *citing Canter*, 283 So.2d at 726-27 (individual supervisors who had knowledge of the weight bearing limit of the equipment that broke and killed the plaintiff and/or who failed to provide the correct weight being lifted despite having knowledge that additional weight was added were liable); *Esco,* 468 So.2d at1175 (finding liable the superintendent whose job was to know of energized power line and knew of energized power line but who failed to take steps to cut off the power to the line or instruct the operator of the crane that contacted the line that caused injury to the plaintiff to act safely, and finding liable the assistant superintendent who failed to take proper precautions when operating crane with obstructed view close to power line and who hit power line, and who also failed to designate a signalman. Conversely, individuals who were unaware of the presence of the power line, seldom visited the job site, and delegated their duties to others were not liable); *Sostand v. Rolling Frito Lay Sales*, No. 16-01268, 2017 WL 1485190, at *4 (W.D. La. Mar. 23, 2017) (claim stated against employee who personally caused injury to the plaintiff when he pushed a cart into the plaintiff's knee); *Lounsbury v. Winn-Dixie Louisiana, Inc.,* No. 95-2544, 1995 WL 626211, at *2 (E.D. La. Oct. 20, 1995) (claim stated against employee who personally caused injury to plaintiff when he squatted by the plaintiff's feet and the plaintiff tripped over him); and *Gerald v. Hosp. Properties Tr.,* No. 09-2989, 2009 WL 1507570, at *4 (E.D. La. May 27, 2009) (claim stated against store managers alleged to have personally made the decision to put a plastic covering on a gate that caused the floor upon which the plaintiff fell to be slippery, when the managers knew that that there were problems with condensation on the flooring).

dismissed without prejudice.[84]  With Housley dismissed, the jurisdictional requirements of 28 U.S.C. § 1332 are met, and therefore, the Plaintiff's Motion to Remand should be denied.

**IT IS RECOMMENDED** that the Motion to Remand[85] be **DENIED** and that Plaintiff's claims against Richard S. Housley be **DISMISSED WITHOUT PREJUDICE.**

In the event this recommendation is adopted, this matter should be referred for a scheduling conference.

Signed in Baton Rouge, Louisiana, on March 3, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[84] *See Montoya v. State Farm Mutual Automobile Insurance Co.*, No. 16-0005, 2016 WL 5942327, at *3 (W.D. Tex. Oct. 12, 2016) ("When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice.") (*citing Int'l Energy Ventures Mgt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016)).

[85] R. Doc. 17.