UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TAYLOR DEGGS, ET AL. | CIVIL ACTION NO. |
| VERSUS | |
| FIVES BRONX, INC., F/K/A ABBEY INTERNATIONAL, LTD., F/K/A ABBEY ETNA MACHINE CO., ET AL. | 19-406-BAJ-EWD |

## RULING AND ORDER

Before the Court[1] is a Motion to Preserve Evidence ("Motion"), filed by Defendant APTIM Maintenance, LLC ("APTIM").[2] Taylor Deggs ("Plaintiff"), individually and as tutrix on behalf of the minor children S.L.D.D. and S.L.D.S., opposes the Motion.[3] For the reasons that follow, the Motion will be granted.

### I.   Background

In this civil action, Plaintiff seeks damages on behalf of herself and her minor children for injuries that caused the death of Plaintiff's husband, Stephen Deggs ("Decedent") on September 13, 2018 at a Stupp Corporation facility located in Baton Rouge, Louisiana. Decedent was crushed when he became wedged between a pipe and a cutting machine (the "Accident").[4]

On or about March 27, 2019, Plaintiff filed an Original Petition for Wrongful Death and Survival Action ("Petition") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge against Fives Bronx, Inc. ("Five Bronx") and Abbey Etna Company, Ltd., ("Abbey Ltd."),

---

[1] A magistrate judge may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). Moreover, as this motion is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof. *See, e.g., Wilson v. Sharp,* No. 17-84, 2017 WL 4685002 (M.D. La. Oct. 18, 2017) at *1, n. 3 (granting motion to stay discovery), *citing Boyd v. Occidental Fire & Casualty Co. of North Carolina*, No. 10-0672, 2011 WL 4062383 at *1, n. 1 (M.D. La. Sept. 13, 2011).
[2] R. Doc. 25. Defendant Richard S. Housley, alleged to be the APTIM supervisor responsible for overseeing APTIM'S duties at the facility, has been dismissed. R. Doc. 34.
[3] R. Doc. 30.
[4] R. Doc. 1-2, p. 10, ¶¶ 13-14.

whom Plaintiff contends manufactured the conveyor moving the pipe and the cutting machine;[5] Rockwell Automation, Inc. ("Rockwell"), whom Plaintiff contends manufactured the control panel that controlled the conveyor;[6] and APTIM, whom Plaintiff alleges provided maintenance, repair and inspection services on the equipment at the facility.[7] [8]

Plaintiff asserts a claim under Louisiana's Products Liability Act against Fives Bronx, Rockwell, and Abbey Ltd., and asserts a general negligence claim against all Defendants for "the creation of a hazardous condition" and failing to warn, inspect, repair, and maintain.[9] The matter was removed to this Court on the basis of diversity jurisdiction.[10]

APTIM filed the instant Motion contending that, at the time of Decedent's death, certain items of evidence related to Decedent and/or the Accident were collected and retained by the East Baton Rouge Parish Sheriff's Office ("EBRSO"). APTIM sought an Order from this Court directing EBRSO to preserve the evidence, but failed to describe the evidence sought to be preserved in the Motion.[11] On October 9, 2019, the Court conducted a telephone conference with the parties to discuss the Motion; specifically, the "items of evidence related to" the Decedent and/or the Accident held by EBRSO and all steps taken to effect EBRSO's preservation of such evidence prior to the filing of the Motion.[12] During the conference, APTIM clarified that the evidence it seeks to preserve is referenced in the report of Decedent's autopsy (the "Coroner's Report"), and is comprised of Decedent's personal

---

[5] Plaintiff alleges that Fives Bronx was formerly known as "Abbey International Ltd.," which was formerly known as "Abbey Etna Machine Co." R. Doc. 1-2, p. 8, ¶ 2.
[6] Plaintiff and Rockwell contend that Rockwell conducts business as "Allen-Bradley." R. Docs. 1-2, p. 9, ¶ 3 and R. Doc. 5.
[7] R. Doc. 1-2, pp. 8-9, 11, ¶¶ 2, 3, 6, and 15.
[8] After the instant Motion was filed, APTIM filed a Third Party Complaint against Stupp Bros., Inc. for defense and indemnity. R. Doc. 39. Fives Bronx also filed a Third Party Complaint against Stupp Bros, Inc. and Fairfield Machine Company, Inc. for indemnity. R. Doc. 50.
[9] R. Doc. 1-2, pp. 11-13, ¶¶ 16-24.
[10] R. Doc. 1 *and see* R. Doc. 34, Ruling and Order adopting the undersigned's Report and Recommendation at R. Doc. 32, recommending dismissal of all claims against Housley without prejudice and denial of Plaintiff's Motion to Remand.
[11] R. Doc. 25, ¶¶ 2, 4.
[12] R. Docs. 26, 28.

effects, including "1 plastic container with a temperature sticker, possibly containing urine."[13] After the telephone conference, APTIM filed its supplemental brief providing further details regarding the relief sought in the Motion, including a copy of the Coroner's Report.[14] Plaintiff timely filed an opposition memorandum.[15]

## II. Law and Analysis

### A. Legal Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Further, Fed. R. Civ. P. 34 provides that, as provided in Fed. R. Civ. P. 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.[16]

A motion to preserve evidence has been recognized as the procedural vehicle by which to obtain an order "to preserve data that would otherwise vanish."[17]  Courts inherently have the power to issue orders to preserve evidence.[18]  However, courts must use restraint and discretion when

---

[13] Coroner's Report at R. Doc. 27-1, p. 1.  The other items listed include cigarettes, a wallet containing cards, a watch, articles of clothing, keys, a lighter, cash, a cell phone and ear buds.
[14] R. Doc. 27.
[15] R. Docs. 27, 30.
[16] *Dupont v. Costco Wholesale Corp.,* No. 17-04469, 2019 WL 8158471, at *3 (E.D. La. Oct. 15, 2019), *aff'd,* No. 17-4469, 2019 WL 5959564 (E.D. La. Nov. 13, 2019) ("[S]ubpoenas duces tecum, governed by Rules 45 and 26, can be issued to non-parties, compelling them to produce documents and/or electronically store information in their 'care custody, or control,'" *citing* Fed. R. Civ. P. 45(a)(1) and *Sines v. Kessler*, No. 18-4044, 325 F.R.D. 563, 565 (E.D. La. May 17, 2018).
[17] *Tellis v. LeBlanc,* No. 18-0541, 2018 WL 6006909, at *2 (W.D. La. Nov. 14, 2018).
[18] *Conrod v. Young*, No. 06-1005, 2006 U.S. Dist. LEXIS 79476, at **3-4 (W.D. La. Oct. 18, 2006) ("The court is empowered to fashion appropriate, equitable relief. In fact 'courts have held that they have the inherent power to order that evidence be preserved and have, for good cause, required that specific procedures be adopted to ensure such preservation.'"), *citing Pueblo of Laguna v. U.S.,* 60 Fed. Cl. 133, 135 (Fed. Cl. Mar. 19, 2004).

exercising inherent authority.[19] As discussed more fully below, when resolving motions to preserve, courts have applied different tests, including the four-prong test for a preliminary injunction, (*i.e.*, the consideration of (1) substantial likelihood of success on the merits; (2) substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) whether the threatened injury outweighs any damage that the injunction might cause defendants; and (4) whether the injunction will disserve the public interest),[20] and the three-prong preservation test of *Capricorn Power Co. v. Siemens Westinghouse Power Corp* ("*Capricorn*")*,* (*i.e*., the consideration of (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.).[21]

### B. Arguments of the Parties

APTIM contends that, as part of Decedent's autopsy, the Coroner obtained biological samples from Decedent which were subject to toxicology testing by NMS Labs. The lab results indicated that Decedent's biological samples tested possible for "Delta-9 THC" ("THC"), which the Coroner's

---

[19] *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion. *See Roadway Express, supra*, 447 U.S., at 764, 100 S.Ct., at 2463.")

[20] *Tellis,* 2018 WL 6006909, at *3, *and see Hunter v. Sterling*, No. 08-0835, 2009 WL 4348660, *1 (M.D. La. Nov. 24, 2009) ("A motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted. *Pepsi–Cola Bottling Co. of Olean v. Cargill, Inc.,* 1995 WL 783610 (D. Minn., Oct. 20, 1995) and *Humble Oil & Refining Co. v. Harang,* 262 F.Supp. 39 (E.D. La. 1966). In this Circuit, a party must establish a substantial threat of irreparable harm in order to obtain an injunction. *See Sierra Club v. City of San Antonio,* 112 F.3d 789 (5th Cir. 1997), *cert. denied,* 522 U.S. 1089, 118 S.Ct. 879, 139 L.Ed.2d 868 (1998).") *See also Software Tree, LLC v. Red Hat, Inc.,* No. 09-097, 2010 WL 11531146, at *1 (E.D. Tex. Aug. 25, 2010), *report and recommendation adopted,* No. 09-097, 2010 WL 11531233 (E.D. Tex. Sept. 21, 2010) ("[A] preliminary injunction is an extraordinary remedy that may only be granted if the plaintiff shows: 1) a substantial likelihood of success on the merits; 2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; 3) the threatened injury outweighs any damage that the injunction might cause defendants; and 4) the injunction will not disserve the public interest.")

[21] No. 01-39J, 220 F.R.D. 429, 433 (W.D. Pa. Apr. 21, 2004) (setting forth the four factor test referenced above).

4

Report describes as "the principle psychoactive ingredient in marijuana/hashish," and "Delta-9 Carboxy THC," which the Coroner's Report describes as "the inactive metabolite of THC."[22] The Coroner's Report states that marijuana "is a DEA Schedule I hallucinogen."[23] According to APTIM, these results are evidence that Decedent ingested marijuana recently enough before his death for the THC to be reflected in the toxicology results. APTIM contends: "Given the positive results for marijuana in Mr. Deggs' post-mortem toxicology testing, paired with the fact that Mr. Deggs was in possession of a plastic bag 'possibly containing urine' at the time of his death, the Defendants are concerned that Mr. Deggs was prepared to provide a fake clean urine sample in the event he was forced to undergo a random drug test at work on the date of the accident."[24] APTIM argues that the plastic bag is evidence that Decedent was under the influence of marijuana while working and at the time of the Accident, that Decedent intentionally went to work on the day of the Accident under the influence, and that Decedent was prepared to hide his intoxication from his employer on the day of the Accident. Although acknowledging that the foregoing arguments are hypothetical at this point in the litigation, APTIM argues that if these arguments can be supported with sufficient evidence at trial, then "they will all touch on the central and pivotal determinations of liability and the application of comparative fault in this case."[25]

APTIM states that it contacted EBRSO regarding the location of Decedent's personal effects listed in the Coroner's Report and was advised by James Freeman ("Freeman") of EBRSO that the items are still in the custody of EBRSO. APTIM alleges that Freeman stated that EBRSO has no pre-determined time frame for how long the items will be retained, and while it is unknown when EBRSO might destroy the items, EBRSO will not indefinitely retain them without a court order requiring

---

[22] R. Doc. 27-1, pp. 3-4. APTIM mis-quotes the Coroner's Report regarding Delta-9 Carboxy THC in APTIM's allegation that the Coroner's Report reflects that Delta-9 Carboxy THC is the principle psychoactive ingredient in marijuana/hashish. R. Doc. 27, p. 2. In fact, the Coroner's Report reflects that Delta-9 Carboxy THC is the inactive metabolite of THC.
[23] R. Doc. 27-1, p. 4.
[24] R. Doc. 27, p. 3.
[25] R. Doc. 27, p. 3.

preservation. APTIM contends that Freeman stated that orders to preserve evidence are frequently directed to EBRSO, instructing it to retain evidence indefinitely.[26]

APTIM relies on this Court's inherent power to issue the requested preservation order to EBRSO, *citing Arkin v. Gracey-Danna, Inc.,* where the U.S. District Court for the Middle District of Florida issued a preservation order to a third-party broadcaster of facsimiles to preserve fax transmission reports because the plaintiff made an adequate showing under the two-part preservation test discussed in *Pueblo of Laguna v. United States*[27] and the three-factor preservation test discussed in *Capricorn*.[28] *Arkin* held that the plaintiff "demonstrate[d] a risk that relevant and existing evidence is in danger of being destroyed or was in danger of being destroyed" in the absence of a court order as a result of the broadcaster's retention policies, which required automatic deletion 60-90 days following each broadcast. The court noted that the need for the preservation order "[was] all the more pressing" because the broadcaster was not a party to the proceeding.[29]

Likewise, Plaintiff also cites *Bright Solutions for Dyslexia, Inc. v. Doe*, where the U.S. District Court for the Northern District of California issued a preservation order to third parties eBay, PayPal and Google to preserve account information for alleged copyright infringers after considering the *Capricorn* factors, and holding in part that the plaintiffs would be irreparably harmed by those entities' failures to preserve the alleged infringers' subscriber information. The *Bright Solutions* court also held that the need for the order was all the more pressing because the third party entities had routine destruction policies and were under no duty to preserve absent a court order.[30] APTIM argues that, as in *Arkin* and *Bright Solutions*, this Court should find that there is a risk that relevant evidence

---

[26] R. Doc. 27, p. 4.
[27] R. Doc. 27, p. 5, *citing Arkin v. Gracey-Danna, Inc.,* No. 16-1717, 2016 WL 3959611, at *1 (M.D. Fla. July 22, 2016) ("Some courts employ a two-prong test that requires the proponent to demonstrate that the order is necessary and not unduly burdensome.") *citing Pueblo of Laguna*, 60 Fed. Cl. at 135-36, and 138.
[28] R. Doc. 27, pp. 4-5, *citing Arkin,* 2016 WL 3959611, *2 (*citing Capricorn*, 220 F.R.D. at 433-34 (other citations omitted). Plaintiff does not explicitly refer to the three factors by reference to *Capricorn*; however, both cases cited by Plaintiff (*Arkin* and *Bright Solutions, see infra*) cite to the *Capricorn* decision for these factors.
[29] R. Doc. 27, p. 5, *citing Arkin* at *2.
[30] R. Doc. 27, pp. 5-6, *citing* No. 15-1618, 2015 WL 5159125, at **2-3 (N.D. Cal. Sept. 2, 2015).

will be destroyed, and the need for a preservation order is all the more urgent because the evidence at issue is held by EBRSO, a non-party who is under no duty to preserve.

Referencing the *Capricorn* factors (as cited in the above-referenced cases), APTIM contends that EBRSO has a policy of periodically destroying or discarding the items of evidence in its possession but has no timeline by which it may do so, and EBRSO conveyed to APTIM that it will not retain the items without a court order. Thus, APTIM argues that the first *Capricorn* factor is met as there is "a great deal of concern that, without a Court Order instructing it to do otherwise, the EBRSO could destroy or discard" the Decedent's personal effects at any moment, which renders the need for a Court Order urgent because EBRSO is a third party who is under no duty to preserve.[31] Next, APTIM argues that the preservation order sought is just to direct EBRSO to retain the items. APTIM is not currently seeking to introduce the items into evidence or seeking a determination of whether the items are relevant or admissible. Rather, according to APTIM, all that the Court need now determine is whether the items could reasonably lead to the discovery of admissible evidence, which is a low bar that is met here in light of the Decedent's toxicology test. According to APTIM, future challenges to admissibility or relevancy of the items should not prevent retention of the items now because, if the items are destroyed, any arguments or defenses that Defendants might have had based on the items will be irrevocably lost, which satisfies the second *Capricorn* factor.[32] Finally, APTIM contends that, per Freeman, "the retention and preservation of items of physical evidence involved in litigation is one of [EBRSO]'s ordinary and regular duties," and such retention places little burden on EBRSO. Therefore, EBRSO can maintain Decedent's items, which satisfies the third *Capricorn* factor.[33]

---

[31] R. Doc. 27, pp. 7-8, *citing* 2015 WL 5159125 at *3.
[32] R. Doc. 27, pp. 8-9, *and see* p. 10.
[33] R. Doc. 27, p. 10.

In response, Plaintiff argues that this Court should exercise its inherent power with restraint and discretion, and that, as an injunctive remedy, the appropriate consideration governing issuance of a preservation order is whether APTIM has made a showing of "a substantial threat of irreparable harm."[34] Like APTIM, however, Plaintiff urges the application of the three-factor *Capricorn* test in evaluating whether that standard is met, even though, according to Plaintiff, district courts in this circuit have sometimes declined to apply it.[35] Turning to the *Capricorn* factors, Plaintiff argues that evidence of a "significant threat" to the items at issue must be shown in order to satisfy the first factor and APTIM has failed to provide such evidence.[36] Plaintiff argues that APTIM's alleged conversation with Freeman is not sufficient evidence, but even if the Court were to consider it, mere statements that evidence may be lost do not justify a preservation order. Unlike *Arkin*, which involved an automatic timeframe for destruction, EBRSO has given no timeline for destruction in this case and an indefinite possibility of destruction does not justify a preservation order.[37]

Regarding the second *Capricorn* factor, Plaintiff contends that APTIM has failed to show that it faces significant harm absent the evidence, which requires a showing that the evidence is relevant and is not satisfied by the suggestion that the evidence is merely something the movant may want to use at trial.[38] Plaintiff contends that APTIM can use the toxicology report to establish that Decedent

---

[34] R. Doc. 30, p. 2, *citing Hunter v. Sterling*, No. 08-0385, 2009 WL 4348660, at *1 (M.D. La. Nov. 24, 2009) ("A motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted. [*Pepsi–Cola Bottling Co. of Olean v. Cargill, Inc.,* 1995 WL 783610 (D. Minn. Oct. 20, 1995), *citing Humble Oil & Refining Co. v. Harang,* 262 F.Supp. 39 (E.D. La. 1966).] In this Circuit, a party must establish a substantial threat of irreparable harm in order to obtain an injunction. [*See Sierra Club v. City of San Antonio,* 112 F.3d 789 (5th Cir. 1997), *cert. denied,* 522 U S. 1089, 118 S.Ct. 879, 139 L.Ed.2d 868 (1998).]")

[35] R. Doc. 30, p. 3, *citing Capricorn*, 220 F.R.D, at 433-34; *Legacy of Life, Inc. v. American Donor Services, Inc.*, No. 06-0802, 2006 WL 8435984, *2, (W.D. Tex. Sept. 21, 2006) (applying the *Capricorn* test); and *Gabarick v. Laurin Maritime (America), Inc*., No. 08-04007, 2008 WL 11381421, *3, n. 1 (E.D. La. Aug. 29, 2008) (declining to apply *Capricorn* in favor of applying Fed. R. Civ. P. 26 precepts but noting that *Capricorn* was "informative.").

[36] R. Doc. 30, p. 4, *citing Capricorn*, 220 F.R.D. at 434-35 and *Best v. AT&T*, No. 12-564, 2014 WL 1923149, *2 (S.D. Ohio May 14, 2014) ("In the absence of evidence establishing a need for a preservation order or expediting discovery, the Court finds no good cause for granting plaintiff's motions.")

[37] R. Doc. 30, p. 4, *citing Capricorn*, 220 F.R.D. at 435 and *Arkin*, 2016 WL 3959611, at *1.

[38] R. Doc. 30, p. 5, *citing Walker v. Hollaway*, No. 17-244, 2018 WL 7283267, *2 (S.D. Miss. Nov. 7, 2018), *report and recommendation adopted sub nom., Walker v. Holloway*, No. 17-244, 2019 WL 507490 (S.D. Miss. Feb. 8, 2019) (holding that the plaintiff failed to show that the correspondence sought to be preserved bore any relevance to the lawsuit) *and*

8

had drugs in his body when he died, and APTIM's attempt "to preserve evidence of a supposed intent to elude a drug test would have no purpose other than to try and to make Mr. Deggs look bad," and would impugn Decedent's character.[39] Plaintiff argues that the sought-after items are neither relevant nor admissible, and thus the absence of the items will not irreparably harm APTIM.[40] As such, Plaintiff contends that the third *Capricorn* factor need not be considered.[41] However, even if it is considered, Plaintiff argues that APTIM's failure to present evidence regarding the burden on EBRSO to preserve the items weighs against the issuance of a preservation order.[42]

### C. Decedent's Personal Effects Are Discoverable and Subject to Preservation

As an initial matter, the Motion seeks an Order preserving all of Decedent's effects held by EBRSO, but both parties focus their arguments primarily on preservation of the plastic container. Plaintiff does not specifically oppose preservation of the other personal effects listed in the Coroner's Report, and Decedent's family would likely want these items. Accordingly, the undersigned considers the parties' dispute to be over preservation of the container, with no opposition to a preservation order as to the remaining items in EBRSO's possession.

With respect to discoverability of the container, Plaintiff asserts wrongful death claims arising out of the untimely death of Decedent. It is undisputed that Decedent's post-mortem toxicology report indicates that measurable levels of THC were present in Decedent's lab specimens at the time of his death. One of the potential defenses in this case is that Decedent was comparatively at fault for the

---

*citing* the undersigned's October 9, 2019 Order at R. Doc. 28, directing APTIM to file a supplemental brief addressing, in part, the relevance of the items sought.

[39] R. Doc. 30, pp. 2, 5, *citing U.S. v. Gonzales-Lira,* 936 F.2d 184, 189 (5th Cir. 1991)(enumerating the test for whether Fed. R. Evid. 404(b) authorizes the admission of evidence of the defendant's prior bad acts).

[40] R. Doc. 30, p. 5, *c.f., Bright Solutions*, 2015 WL 5159125 (finding the second *Capricorn* factor met because, without the subscriber information sought to be preserved, the plaintiffs would not be able to identify the copyright infringers to name as defendants).

[41] R. Doc. 30, p. 6, *citing Capricorn*, 220 F.R.D. at 435 (holding that the presence of both factor one and factor two to a significant degree will be required to justify a preservation order). However, the *Capricorn* court also noted that: "… it must be remembered that in a balancing test one factor may be so crucial that the presence of just that one factor may provide a sufficient justification for an order of preservation." *Id.*

[42] R. Doc. 30, p. 6.

9

circumstances leading to his death (although the undersigned makes no finding as to whether such defense has any merit).[43] The clear container "possibly containing urine" found in Decedent's personal effects (which is the only item specifically addressed in the briefing), could have bearing on that defense. If the liquid in the container is urine, APTIM may argue in defense that Decedent planned to provide "clean" urine in order to pass a workplace drug test, showing that Decedent was aware of the THC in his body while on the job and not inadvertently or unknowingly subjected to THC. While based to some degree on speculation, this argument should not be foreclosed in the early stages of the case. Accordingly, the container is discoverable pursuant to Fed. R. Civ. P. 26[44] because it has potential relevance to a defense, and there appears to be minimal burden to its production, if sought, since it is maintained by EBRSO at this time.

Since the container is discoverable, the next question is whether APTIM has made a showing of a "substantial threat of irreparable harm,"[45] sufficient to establish that this injunctive remedy is warranted. "Irreparable harm" is also the focus of the second prong of the *Capricorn* test, which is the test both parties address in detail in brief. However, in *Hunter*, *Humble Oil* (cited in *Hunter*), and *Capricorn*, the preservation orders at issue were all sought against parties, not third parties, and the motions for preservation orders were all denied. Specifically, in *Hunter*, the plaintiff prisoner sought to preserve evidence in the custody of the defendants. The *Hunter* court denied the motion for a preservation order in light of the defendants' obligation to preserve evidence under the Federal Rules.[46] In *Humble Oil,* the U.S. District Court for the Eastern District of Louisiana denied the plaintiff's motion for injunction to preserve evidence, ultimately holding: "Injunctive relief is not

---

[43] R. Doc. 8, p. 6 (Seventh Defense).
[44] "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."
[45] *Hunter,* 2009 WL 4348660, at *1.
[46] 2009 WL 4348660, at *1.

10

normally available in aid of or in lieu of discovery under Rule 34, Federal Rules of Civil Procedure."[47] In *Capricorn*, the parties asserted cross-motions for preservation after a mistrial due to an untimely produced expert report. After handing down the four-factor test, the *Capricorn* court denied both motions[48] for failure to satisfy factor two (*i.e.*, there was no showing of an imminent threat to the evidence) and failure to present evidence regarding factor three (*i.e.*, the burden of the preservation on the custodian). These cases are factually distinguishable, since the Motion seeks a preservation order against a non-party; however, *Arkin*[49] and *Bright Solutions* are instructive, as they applied *Capricorn* to preservation orders sought against third parties. As such, and because both Plaintiff and APTIM address them in brief, a consideration of the *Capricorn* test is useful to the resolution of the Motion.[50]

Regarding the first *Capricorn* factor, the Court generally has an interest in the continuing existence and maintenance of integrity of the evidence in question because there is a threat of

---

[47] *Humble Oil & Ref. Co. v. Harang,* 262 F. Supp. 39, 44-45 (E.D. La. 1966) (denying the plaintiff's motion for an injunction against the defendant to preserve evidence) and *citing Humble Oil & Refining Company v. Sun Oil Company*, 175 F.2d 670 (5th Cir. 1949).

[48] *See, e.g., Capricorn*, 220 F.R.D. at 437-38 (declining to issue preservation order against plaintiff for failure to establish factor two and holding: "Without proof of destruction or degradation of the evidence, the Court finds that the circumstances surrounding the non-production of the report are an insufficient basis upon which to conclude that the integrity or existence of the evidence is threatened in the absence of a preservation order." *Id.* at 437. The *Capricorn* court noted that the plaintiff's motion was essentially a motion to compel and held: "Items not produced in accordance with proper discovery should be brought to the attention of the Court by way of a motion to compel. Motions for the preservation of evidence should be restricted to those circumstances which raise significant concern that discovery lawfully sought by a party will be lost indefinitely without immediate court action in the form of an order of preservation.") *Id.* at 438.

[49] The motion for preservation in *Arkin* was unopposed by the defendants in that case. 2016 WL 3959611 at *1.

[50] Other courts in this Circuit have recognized the *Capricorn* test in the context of preservation orders directed to parties. *See* the U.S. District Court for the Western District of Texas's *Legacy of Life, Inc.* decision at 2006 WL 8435984 at **1-3 (declining to apply the four-factor test for an injunction and instead applying *Capricorn* and *Pueblo of Laguna*). *See also* the U.S. District Court for the Western District of Louisiana's *Tellis* decision at 2018 WL 6006909, *2 (denying plaintiff's request for an injunction against defendants to re-activate the prison tier cameras as disproportionate in light of the posture of the litigation, which was pending class certification, but noting that, if re-urged, the proper vehicle for the relief sought was a motion to preserve evidence and if the evidence was found discoverable under Fed. R. Civ. P. 26, "the Court also believes that the three-prong test of *Capricorn Power Co.* may be an appropriate legal standard under which to evaluate a request to require Defendants to reactivate the tier cameras' recording capabilities because the *Capricorn* test is a standard for preservation orders."). Because the *Tellis* Court did not grant the plaintiff's motion, however, it declined to rule on whether *Capricorn* was the correct standard at that juncture.

11

destruction by EBRSO,[51] and the container holds evidence that may be relevant, particularly to APTIM's defense of comparative fault, but possibly to another claim or defense in this action if the plastic container holds a substance *other than urine*. While Plaintiff can challenge the introduction of this evidence if and when it is offered, that determination is not appropriate or necessary at this time. As to the second factor (and the *Hunter* standard), APTIM sufficiently alleged during the parties' telephone conference and in its supplemental briefing, that in the absence of a preservation order, EBRSO will destroy the evidence pursuant to EBRSO's policies at some point. While there is no definite timeline, the destruction of the evidence would result in irreparable harm because, once destroyed, the evidence cannot be used for any purpose and cannot be recreated. The container at issue, described as bearing a temperature sticker, appears to be a unique piece of evidence that is not subject to replacement.[52] The third *Capricorn* factor is met because EBRSO can maintain the evidence sought in its current form and without incurring a substantial financial outlay. As described, the Decedent's personal effects are not voluminous and EBRSO routinely preserves this type of evidence as the result of its police enforcement and investigative operations. Finally, there is a need for an order directing EBRSO to preserve Decedent's effects because EBRSO is not a party to this case and has no obligation to maintain Decedent's effects in the absence of such an order.

### III. Conclusion

Plaintiff does not oppose a preservation order as to the other items of Decedent Steven Deggs' personal effects that are currently in the possession of the East Baton Rouge Parish Sheriff's Office. As to the plastic container at issue, the liquid it holds is discoverable as it may relate to a claim or

---

[51] *Capricorn,* 220 F.R.D. at 434 ("The first prong of the balancing test, namely the court's level of concern for the continuing existence and maintenance of the integrity of the evidence, is clearly a necessary component in the determination whether to grant or deny a preservation order. This is so because in the absence of any significant past, present or future threat to the continuing integrity or existence of the evidence, such an order is superfluous.")

[52] *See, e.g.*, *Capricorn,* 220 F.R.D. at 435 (noting that destruction of "one-of-a-kind" evidence, or evidence that is irreplaceable, such as where a key item of evidence is tested through "non-destructive" means, can lead to irreparable injury to a party who needs it to prove their claims).

12

defense in the case. Further, APTIM has met its burden of establishing the need for a preservation order for the container since there is a threat of destruction by EBRSO if no preservation order is issued, which would cause irreparable harm in loss of evidence that could not be recreated, and such an order does not operate as a hardship on EBRSO, who regularly maintains evidence in criminal investigations. Accordingly,

**IT IS ORDERED** that the Motion to Preserve Evidence,[53] filed by Defendant APTIM Maintenance, LLC, is **GRANTED. DURING THE PENDENCY OF THIS CASE** the East Baton Rouge Parish Sheriff's Office is directed to **PRESERVE** the personal effects of decedent Stephen Deggs in EBRSO's custody, described in the East Baton Rouge Parish Coroner's Report as follows:

> Hospital staff bagged the decedents personal belongings, which included: cigarettes, a black wallet with miscellaneous cards (including an OSHA card, Alliance Safety Council card, and Stupp ID), black watch, black underwear, camouflage pants with a belt (keys found in the left rear pocket, a lighter and $6 cash found in the left front pocket), a cell phone, black boots, ear buds, 1 black glove for the right hand, and 1 plastic container with a temperature indicating sticker, possibly containing urine. All items were collected by EBRSO Crime Scene Dy. Staggs.

**IT IS FURTHER ORDERED** that counsel for APTIM shall serve a copy of this Order and the attached Notice on the East Baton Rouge Parish Sheriff's Office by no later than three (3) business days from the date of this Order.

Signed in Baton Rouge, Louisiana, on June 10, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[53] R. Doc. 25.