UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAYLOR DEGGS,  
*individually and on behalf  
of the minor children of  
Stephen Deggs, deceased*

CIVIL ACTION

APTIM MAINTENANCE, LLC, ET AL.

NO. 19-00406-BAJ-EWD

RULING AND ORDER

Before the Court is Defendant Stupp Bros., Inc.'s **12(b)(6) Motion To Dismiss Third Party Demand Filed By Aptim Maintenance, LLC (Doc. 55)**. The Motion is opposed. (Doc. 58). Defendant filed a Reply Memoranda. (Doc. 60). For the reasons stated herein, Defendant's Motion is **DENIED**.

I. BACKGROUND

On March 27, 2019, Plaintiff Taylor Deggs filed this wrongful death and survival action on behalf of herself and her two minor children following an alleged workplace incident that resulted in the death of Stephen Deggs ("Decedent"), Plaintiffs' husband and father. (Doc. 1-2, ¶¶ 1, 7, 13–15). Decedent allegedly suffered serious injuries when wedged between a pipe and pipe cutting machine at a facility operated by Stupp Corporation, resulting in his death. (*Id.* at ¶¶ 13–14).

Plaintiff asserts negligence claims against several Defendants, including Aptim Maintenance, LLC ("Aptim"). (*Id.* at ¶¶ 2–6; 16–17). Aptim allegedly provided maintenance, repair, and inspection services on the equipment at the facility,

1

including repair and maintenance work on the subject equipment involved in the underlying incident. (*Id.* at ¶ 15).

Aptim then brought a Third Party Complaint against Stupp Bros., Inc. ("Stupp"), alleging that Stupp is required to defend, indemnify, and hold Aptim harmless under a Maintenance Server Master Agreement ("MSMA"). (Doc. 42, ¶ 11). Aptim alleges that Stupp's refusal to defend and indemnify Aptim constitutes a breach of contract and entitles Aptim to damages, costs, and attorney's fees. (*Id.* at ¶ 15). Stupp moves to dismiss Aptim's Third Party Complaint. (Doc. 55).

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly,* 550 U.S. at 556). Hence, the

including repair and maintenance work on the subject equipment involved in the underlying incident. (*Id.* at ¶ 15).

Aptim then brought a Third Party Complaint against Stupp Bros., Inc. ("Stupp"), alleging that Stupp is required to defend, indemnify, and hold Aptim harmless under a Maintenance Server Master Agreement ("MSMA"). (Doc. 42, ¶ 11). Aptim alleges that Stupp's refusal to defend and indemnify Aptim constitutes a breach of contract and entitles Aptim to damages, costs, and attorney's fees. (*Id.* at ¶ 15). Stupp moves to dismiss Aptim's Third Party Complaint. (Doc. 55).

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly,* 550 U.S. at 556). Hence, the

complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### III. DISCUSSION

Stupp moves to dismiss Aptim's Third Party Complaint based on its argument that the Stupp-Aptim MSMA is a construction contract under the Louisiana Anti-Indemnity Act ("LAIA"), and therefore, the LAIA voids any indemnity provisions contained therein. (Doc. 55; Doc. 42). Alternatively, Stupp asserts that Aptim's Third Party Complaint is premature. (*Id.*).

#### i. The MSMA is a Construction Contract under the Louisiana Construction Anti-Indemnity Act

First, the Court must determine whether the MSMA constitutes a "construction contract" under the LAIA. (Doc. 55-1, p. 4). Stupp argues that if the MSMA is a construction contract, then the LAIA renders the indemnity provisions in the MSMA, the basis for Aptim's Third Party Complaint, void. (*See id.* at p. 3; Doc. 42, ¶ 11).

The LAIA voids certain indemnity and insurance provisions in "construction contracts":

> [A]ny provision, clause, covenant, or agreement contained in, collateral to, or affecting a ... construction contract which **purports to indemnify, defend, or hold harmless**, or has the effect of

3

> indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is **null, void, and unenforceable.**
>
> [A]ny provision, clause, covenant, or agreement contained in, collateral to, or affecting a ... construction contract which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable.

La. Rev. Stat. § 2780.1 (emphasis added); *see also Atl. Specialty Ins. Co. v. Phillips 66 Co.*, 365 F. Supp. 3d 706, 710 (E.D. La.), *aff'd*, 790 F. App'x 598 (5th Cir. 2019).

The LAIA defines a construction contract as:

> Any agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, or other improvement to real property[.]

La. Rev. Stat. § 9:2780.1(2)(a).

Here, Stupp and Shaw Maintenance, Inc., the predecessor in interest of Aptim, executed the MSMA at issue on August 18, 2011, and executed a First Amendment to same on October 6, 2011. (Doc. 58-1, p. 1; Doc. 58-3, p. 1; *see* Doc. 55-1, p. 4). In the MSMA, Aptim agrees to perform certain "services" for Stupp, defined under the MSMA as follows:

4

**Section 1.1** **The Services.**

During the term of this Agreement, the Contractor shall perform such work and services requested by the Company of a maintenance, repair and/or renovation nature, scheduled and unscheduled turnarounds and new construction and such other services agreed upon by the Contractor in writing as the Company requests from time to time by written instruction to the Contractor, at the Company's site(s) located at:

12555 Ronaldson Road, Baton Rouge, LA 70807.

Contractor shall furnish such labor and personnel (including but not limited to such supervisory personnel, skilled craftsmen, helpers, laborers, clerical, packaging, warehouse and janitorial personnel) as the Contractor, in its sole discretion, deems necessary, appropriate or desirable to carry out the agreed upon services or the additional, special services requested in writing by the Company and accepted by the Contractor in writing (the "Services").

(Doc. 58-1, p. 1; *see* Doc. 55-1, p. 4 ("The prefatory paragraph of the MSMA denotes that Stupp will be referred to as 'Company' and Shaw Maintenance (the predecessor in interest of Aptim) will be referred to as 'Contractor.'")). The First Amendment to the MSMA amended the "services" to be provided as follows:

> 2. Section 1.1 The Services, the first paragraph of this Section 1.1 is hereby deleted in its entirety and replaced with the following:
>
>> "During the term of this Agreement, the Contractor shall perform such work and services requested by the Company of a maintenance, repair and/or renovation nature, scheduled and unscheduled turnarounds, new construction, engineering or other professional services and such other services agreed upon by the Contractor in writing as the Company requests from time to time by written instruction to the Contractor, at the Company's site(s) located at:"
>
> 3. Section 1.1 The Services, the last paragraph of this Section 1.1 which begins, "To the extent any Services required by Company to Contractor include engineering services. . ." is hereby deleted in its entirety.

(Doc. 58-3, p. 1).

Stupp argues that the MSMA speaks for itself—as a contract for "maintenance, repair and renovation . . . and new construction" at the Stupp site in Baton Rouge, there can be no reasonable dispute that the MSMA involved the "construction,

5

alteration, renovation, repair, or maintenance" of the Stupp "building" specified thereunder. (Doc. 55-1, p. 4–5).

Aptim responds that the MSMA is not a "construction contract" as defined by the LAIA. (Doc. 58, p. 2). Rather, Aptim argues that the "extremely general, broad language in Section 1.1 of the MSMA simply does not accurately reflect the actual work Aptim was asked to perform at Stupp's [] facility under the MSMA." (*Id.* at p. 4). Aptim contends that it did not actually perform any type of "construction" work. (*Id.*). Instead, Aptim argues that it performed administrative, managerial, and supervisory work overseeing Stupp personnel who operated pipe-production machinery and equipment at the Stupp facility, including any necessary routine maintenance, repair, and inspection services. (*Id.* at p. 4–5). Aptim asserts that it never "constructed," "designed," "altered," or "renovated" any of the pipe-production machinery beyond routine maintenance and repair. (*Id.* at p. 5).

Stupp responds that Aptim's attempts to distance itself from the four corners of the MSMA should be disregarded. (Doc. 60, p. 1).

The MSMA defines Aptim's "services" as "maintenance, repair, and/or renovation [], scheduled and unscheduled turnarounds, new construction, engineering, or other professional services. . . at [Stupp's] site(s)." (Doc. 58-3, p. 1). The LAIA provides that a "construction contract" shall mean any agreement for the "construction, [], renovation, repair, or maintenance" "of a building, structure, . . . gas line, appurtenance, or other improvement to real property . . ." La. Rev. Stat. § 9:2780.1(2)(A).

6

The plain language of the MSMA states that Aptim will provide maintenance, renovation, or repair at the Stupp site. (Doc. 58-3, p. 1). The MSMA is clearly an agreement for the renovation, repair, or maintenance of a building, structure, appurtenance, or other improvement to real property, and therefore constitutes a construction contract under the LAIA. *See* La. Rev. Stat. § 9:2780.1(2)(a).

Additionally, the statute defines a "construction contract" as an "agreement for" certain services. *See id.* Thus, while Aptim attempts to make distinctions based on the alleged "actual work" it performed rather than the work it agreed to perform in the MSMA, the Court will look to the "agreement" to determine whether it is a construction contract in accordance with the statute. (*See* Doc. 58, p. 4). The Court finds that the MSMA is a construction contract within the meaning of the LAIA. *See* La. Rev. Stat. § 9:2780.1(2)(a).

### ii. The LAIA Does Not Void the Indemnity Provisions in the MSMA

Aptim asserts that even if the Court construes the MSMA as a "construction contract," the LAIA only nullifies and invalidates indemnity provisions that purport to indemnify the indemnitee against liability resulting from the indemnitee's own negligence. (Doc. 58, p. 8). Louisiana Revised Statutes § 9:2780.1(B) provides that any agreement contained in a construction contract "which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, **the indemnitee** from or against any liability for loss or damage **resulting from the negligence or intentional acts or omissions of the indemnitee . . .**" "is contrary to the public policy of this state and is null, void, and unenforceable."

Because here, the indemnity provisions in the MSMA do not require Stupp to indemnify the indemnitee—Aptim—for Aptim's negligence, Aptim argues that the indemnity provisions are not voidable under Louisiana Revised Statutes 9:2780.1(B). (Doc. 58, p. 9). The Court agrees. The MSMA provides the following:

> **Section 13.3   Indemnification Obligations.** The Contractor shall indemnify and hold harmless the Company, its officers, directors, employees and representatives (the "Company Indemnitees") for, from and against all liabilities, claims, suits, judgments, settlements, fees, damages, losses, costs and expenses (including reasonable attorneys' fees) for:
>
> (i) personal injury (including death) or third party property damage, but only to the extent such is caused by the negligence or fault of the Contractor or its Contractor Personnel;
>
> (ii) all claims by the Contractor's employees (including, without limitation, the Contractor Personnel), their heirs or their estates, except to the extent of any negligence, fault or willful misconduct of the Company Indemnitees; and
>
> (iii) all payroll taxes, employer contributions, worker's compensation claims with respect to Contractor Personnel.
>
> The Company shall indemnify, defend and hold harmless the Contractor, its officers, directors, employees, agents and representatives (the "Contractor Indemnitees") for, from and against all liabilities, claims, suits, judgments, settlements, fees, damages, losses, costs and expenses (including reasonable attorneys' fees) for:
>
> (i) personal injury (including death) or third party property damage, but only to the extent such is caused by the negligence or fault of the Company or its employees; and
>
> (ii) for all claims by the Company's employees, their heirs or their estates, except to the extent of any negligence, fault or willful misconduct of the Contractor Indemnitees.

(Doc. 58-1, p. 13). Section 13.3 of the MSMA only requires Stupp to "indemnify, defend and hold Aptim and its 'officers, directors, employees, agents and representatives' harmless for 'all claims by the [Stupp's] employees, their heirs or their estates,'" in the absence of Aptim's negligence, fault, or willful misconduct. (Doc. 58, p. 8–9).

Because Stupp is not required to indemnify Aptim for Aptim's negligence, the indemnity provision does not violate the LAIA. *See* La. Rev. Stat. § 9:2780.1(B).

8

### iii. The Court Will Defer Resolution of Aptim's Indemnity Claims Until After a Determination of Fault

Finally, because Stupp is only required to indemnify Aptim in the absence of Aptim's negligence, fault, or willful misconduct, Stupp rightly points out that the indemnity provisions first require a finding of no negligence against Aptim. (Doc. 55-1, p. 5). Accordingly, Stupp argues that even if the LAIA does not apply, Aptim's Third Party Demand is premature and should be dismissed without prejudice. (*Id.* at p. 6–7 (Aptim's Third Party Demand for indemnity "would be limited only to a reimbursement to Aptim for expenses after they prevailed on a motion for summary judgment or prevailed at trial and a jury found them to be fully free from fault.")).

The Court cannot determine Stupp's indemnity obligations to Aptim, if any, at this time. Rather than dismiss Aptim's Third Party Complaint, subject to the later refiling and relitigating of the same issue, however, the Court will deny Stupp's Motion to Dismiss in the interest of efficiency and defer a determination of Stupp's indemnification obligations to Aptim, if any, following a liability determination. *See Borman v. Shamrock Energy Sols., LLC*, No. CV 17-11720, 2019 WL 670402, at *5 (E.D. La. Feb. 19, 2019) (denying third party defendants' Motion to Dismiss because the court could not determine the enforceability of defendants' defense and indemnity obligations at that time); *see also Winslow v. Am. Airlines, Inc.*, No. CIV.A. 07-236, 2008 WL 4469962, at *2 (E.D. La. Sept. 29, 2008) (deferring resolution of an indemnity claim until after liability was determined for reasons of judicial efficiency, economy, and convenience of parties and noting that while the indemnity claim may

9

be premature under state law, the third party plaintiff was not precluded from asserting the claim under Federal Rule of Civil Procedure 14(a)(1)) (citing *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 51 (La. 2005) (holding that premature indemnity claim be deferred until conclusion of lawsuit); *Burns v. McDermott, Inc.*, 95-0195 (La. App. 1st Cir. 11/9/95), 665 So. 2d 76, 79 (under *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987), although indemnity claim cannot be resolved until fault is determined, no prohibition exists from asserting the claim prior to fault determination)).

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Stupp Bros., Inc.'s **12(b)(6) Motion To Dismiss Third Party Demand Filed By Aptim Maintenance, LLC (Doc. 55)** is **DENIED.**

Baton Rouge, Louisiana, this 30th day of March, 2021

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA