UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAYLOR DEGGS,
*individually and on behalf of the minor children of Stephen Deggs, deceased*

CIVIL ACTION

APTIM MAINTENANCE, LLC, ET AL.

NO. 19-00406-BAJ-EWD

## RULING AND ORDER

Before the Court is Third-Party Defendant Stupp Bros., Inc.'s ("Stupp") **12(b)(6) Motion To Dismiss Third-Party Demand Filed By Fairfield Machine Company, Inc.** ("Fairfield"). (Doc. 75). The Motion is opposed. (Doc. 78). For the reasons stated herein, Stupp's Motion is **DENIED.**

## I. BACKGROUND

Plaintiff Taylor Deggs filed this wrongful death and survival action on behalf of herself and her two minor children following an alleged workplace incident that resulted in the death of Stephen Deggs ("Decedent"), Plaintiffs' husband and father. (Doc. 1-2, ¶¶ 1, 7, 13–15). Decedent allegedly suffered serious injuries when wedged between a pipe and pipe cutting machine at a facility operated by Stupp, resulting in his death. (*Id.* at ¶¶ 13–14).

Plaintiff asserts negligence and product liability claims against several Defendants, including Defendant Fives Bronx, Inc. ("Fives"). (*Id.* at ¶¶ 2–6; 16–24). Fives is the alleged manufacturer, designer, and distributor of the conveyer and cutting machine involved in the underlying incident. (*Id.* at ¶ 15). Plaintiff alleges

that Fives was formerly known as Abbey International, Ltd. and/or Abbey Etna Machine Company.[1] (*Id.* at ¶ 2; Doc. 50, ¶ 5).

Fives brought a Third-Party Complaint against Stupp and Fairfield. (Doc. 50). Therein, Fives asserts that Fairfield and Stupp are contractually required to indemnify, defend, and hold Fives harmless. (*Id.* at ¶¶ 9, 10, 13). Fives alleges that Fairfield and Stupp "contracted and/or were third party beneficiaries to contracts for the design, manufacture, installation, and construction of an Abbey Etna [Fives] Stationary Rotary Cropper and Rotating Crop Manipulator (the "Equipment") as part of a modernization project at the Stupp facility . . ." (*Id.* at ¶ 7). Fives alleges that the manufacture, installation, and construction of the Equipment was completed "pursuant to contractual agreements, understandings, and ancillary documents, which were subject to 'Standard Conditions for Domestic Sales' requiring [Stupp and Fairfield] by contract and/or direct-benefit estoppel to indemnify, hold harmless, and defend Abbey Etna Machine Company" and thereby Fives "against third party claims arising out of [] the Equipment." (*Id.* at ¶ 9).

After Fives filed its Third-Party Complaint against Stupp and Fairfield, Fairfield filed a cross-claim against Stupp. (Doc. 74). Fairfield alleges that to the extent Fairfield is found liable to Fives for defense and indemnity, then Stupp is liable to Fairfield for defense and indemnity. (*Id.* at ¶ 22).

---

1 Fairfield refers to "Fives Bronx f/k/a Abbey International, LTD. f/k/a Abbey Etna Machine Co. and Abbey Etna Company, LTD" as "Abbey" in its briefing. (*See* Doc. 74, ¶ 6; *see also* Doc. 78). To prevent confusion, the Court will refer to this entity as "Fives."

Fairfield alleges that it submitted a Quote to Stupp, which stated that "[c]onditions of sale, warrant, payment terms, etc. for this equipment will be per Abbey Etna Machine Company's [Fives'] Standard Conditions for Domestic Sales Sheet, which is attached and applies." (*Id.* at ¶ 10). Fairfield contends that if defense and indemnity is owed, it is owed by Stupp to Fives. (*Id.* at ¶ 19). Fairfield alleges that Stupp was the "customer" under Fives' Standard Conditions for Domestic Sales, and as such, Stupp expressly agreed to provide defense and indemnity to "all claims by third parties arising out of or in connection with the Contract or the Equipment . . ." (*Id.* at ¶ 22).

Additionally, Fairfield alleges that Stupp issued a Letter of Intent and Authorization to Proceed, signed by Fairfield and Stupp, which provided:

> It is the intent of Stupp Corporation, a division of Stupp Bros. Inc. ("STUPP") and [Fairfield] to enter into a purchase agreement to execute the WORK for the furnishing of equipment for the 24" mill modernization ("PROJECT"), not later than fourteen days after the date of this letter.

(*Id.* at ¶ 15 (citing Doc. 74-3)). The Letter of Intent allegedly further authorized Fairfield to "initiate engineering and procure the necessary vendors, subcontractors, materials, machine shops and other items to complete the WORK by the agreed upon delivery date." (Doc. 74-3). If Fairfield and Stupp did not reach an agreement, the Letter of Intent allegedly provided that Stupp would "reimburse [Fairfield] for all verifiable expenses related to the WORK." (*Id.*).

Stupp moves to dismiss Fairfield's Third-Party Complaint, arguing that a review of all documents invoked by Fives and Fairfield reveals that Stupp was not a

party to any written agreement containing an enforceable indemnity provision. (Doc. 75-1, p. 3). For the reasons stated herein, Stupp's Motion is denied.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III. DISCUSSION

Stupp moves to dismiss Fairfield's Cross-Claim, asserting that its defenses are "virtually identical to those presented in the 12(b)(6) motion filed against [Fives'] Third Party Demand." (Doc. 75-1, p. 2–3; *see also* Doc. 59; Doc. 88). The Court previously addressed Stupp's "virtually identical" arguments and denied Stupp's Motion to Dismiss Fives' Third-Party Complaint. (Doc. 88). For similar reasons, the Court denies the instant Motion.

First, Stupp contends that a review of all documents invoked by Fives and Fairfield reveals that Stupp was not a party to any written agreement containing an enforceable indemnity provision. (Doc. 75-1, p. 3). Fairfield responds that the contract documents attached as exhibits are valid, but their validity cannot be resolved by a Rule 12(b)(6) Motion. (Doc. 78, p. 4–5). The Court previously held that "the determination of whether a valid contract exists [] 'requires factual findings that cannot be made at the Rule 12(b)(6) stage.'" (Doc. 88, p. 5). Thus, the Court will not determine whether a valid contract exists between Fairfield and Stupp at this stage of the litigation.

For similar reasons, Stupp contends that Fairfield does not have standing to advance a claim on behalf of Fives. (Doc. 75-1, p. 5). Stupp argues that the agreements at issue do not contain language indicating that Stupp owes defense or indemnity to Fairfield. (*Id.*). Stupp contends that Fairfield is not seeking indemnity on its own behalf but is rather "using this cross claim as a defensive device in attempting to show that Stupp should be the proper party (if any) to indemnify Five[s]." (*Id.*).

Fairfield responds that it is seeking to enforce "contractual documents, executed between itself and Stupp, which subject Stupp to [Five's] terms and conditions, which include defense and indemnity provisions." (Doc. 78, p. 6). Fairfield argues that it is "not only in privity of contract with Stupp, but is also a third party beneficiary of the sale of the Equipment from [Fives] to Stupp." (*Id.*). Accordingly, Fairfield contends that it has standing to assert a cross-claim against Stupp. (*Id.* at p. 5).

Stupp's "standing" argument hinges on the validity of the alleged agreements between Fairfield and Stupp and the contents of same. To find that Fairfield does not have standing to assert a cross-claim against Stupp, the Court would first have to find that either the alleged agreements at issue are not valid between Fairfield and Stupp, or that the agreements do not contain a binding indemnity provision. Because the Court will not determine the validity of the contracts at issue at the Rule 12(b)(6) stage, the Court finds Stupp's argument regarding standing unpersuasive at this time.

Second, Stupp contends that the Louisiana Construction Anti-Indemnity Act ("LAIA") precludes indemnity in favor of Fives as sought by Fairfield. (Doc. 75-1, p. 7). Fairfield responds that the LAIA does not invalidate the alleged contract documents because the agreements pre-date the LAIA. (Doc. 78, p. 13). The Court previously held:

> [T]o determine whether any alleged indemnity provision is void under the Louisiana Anti-Indemnity Act ("LAIA") as Stupp argues, the Court must first determine whether a contract exists. (*See* Doc. 87, Court's Ruling and Order describing relevant provisions of the LAIA).

> The Court cannot determine whether the contract, if any, constitutes a "construction contract" pursuant to Louisiana Revised Statutes § 9:2780.1(2)(a) without first determining whether the alleged contract documents are valid and binding[.]

(Doc. 88, p. 5). The same reasoning applies here. The Court need not determine whether the LAIA precludes indemnity before first determining whether the alleged contract documents are valid between Fairfield and Stupp.

Third, Stupp contends that Plaintiff's exclusive remedy against Stupp, the Decedent's employer, lies in workers compensation. (Doc. 75-1, p. 2). The Court previously held:

> Stupp also argues that claims against it must be analyzed against the backdrop of the Louisiana Workers' Compensation Act. (Doc. 64, p. 2). Louisiana courts have held, however, that tort immunity under workers' compensation statutes does not preclude contractual indemnity. *Jarreau v. City of Baton Rouge*, 602 So. 2d 1124, 1126–27 (La. App. 1st Cir. 1992) ("[W]hile a joint tortfeasor may not seek tort contribution or indemnification from a plaintiff's employer, there is no prohibition against an employer contractually agreeing to indemnify another party."). Thus, to the extent a valid contractual indemnity provision [] exists, such contractual indemnity is not barred by the Louisiana Workers' Compensation Act.

(Doc. 88, p. 1–2). The same reasoning applies here.

Accordingly, Stupp's Motion to Dismiss is denied. (Doc. 75).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Third-Party Defendant Stupp Bros., Inc.'s **12(b)(6) Motion To Dismiss Third-Party Demand Filed By Fairfield Machine Company, Inc. (Doc. 75)** is **DENIED.**

Baton Rouge, Louisiana, this 29th day of September, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**