UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAYLOR DEGGS,　　　　　　　　　　　　　　　　CIVIL ACTION
*individually and on behalf
of the minor children of
Stephen Deggs, deceased*

APTIM MAINTENANCE, LLC, ET AL.　　　　　　NO. 19-00406-BAJ-EWD

### RULING AND ORDER

Before the Court is Defendant Aptim Maintenance, L.L.C.'s **Motion For Summary Judgment Per F.R.C.P. 56 (Doc. 117)**. Plaintiff and Third-Party Defendant Stupp Bros., Inc., oppose Aptim's Motion. (Doc. 128; Doc. 160; Doc. 131). Aptim filed Reply Briefs in support of its Motion. (Doc. 136; Doc. 137). For the reasons stated herein, Aptim's Motion is **DENIED.**

I.　BACKGROUND

Plaintiff Taylor Deggs filed this wrongful death and survival action on behalf of herself and her two minor children following the death of Stephen Deggs ("Decedent"), Plaintiffs' husband and father. (Doc. 1-2, ¶¶ 1, 7, 13–15). On September 13, 2018, Decedent, a Stupp employee, died following a workplace accident involving the Stationary Cut-Off Machine ("SCO") at Stupp's Baton Rouge facility. (Doc. 117-2, ¶ 2; Doc. 131-1, ¶ 2).

Plaintiff asserts negligence claims against several Defendants, including Aptim Maintenance, LLC ("Aptim"), movant herein. (*Id.* at ¶¶ 2–6; 16–17). Aptim allegedly provided maintenance, repair, and inspection services on the equipment at

1

the facility, including repair and maintenance work on the subject equipment involved in the underlying incident. (*Id.* at ¶ 15).

The summary judgment evidence shows the following.

A.   **The MSMA**

Effective August 18, 2011, Stupp entered into a Maintenance Service Master Agreement (the "MSMA") with Aptim.[1] (Doc. 117-2, ¶ 3; Doc. 131-1, ¶ 3). The MSMA provides that Aptim shall "perform such work and services requested by [Stupp] of a maintenance, repair and/or renovation nature, . . . and such other services agreed upon by [Stupp] in writing as [Stupp] requests from time to time by written instruction to [Aptim]." (Doc 117-4, p. 1). Aptim agreed to:

> Furnish such labor and personnel (including but not limited to such supervisory personnel, skilled craftsmen, helpers, laborers, clerical, packaging, warehouse and janitorial personnel) as [Stupp], in its sole discretion, deems necessary, appropriate or desirable to carry out the agreed upon services or the additional, special services requested in writing by [Stupp] and accepted by [Aptim] in writing (the "Services").

(Doc. 117-4, p. 1). Aptim was also contractually obligated to: (1) perform all services "in accordance with generally acceptable industry practices"; and (2) follow Stupp's safety policies and procedures.[2] (Doc. 131-1, ¶ 28).

---

[1] Stupp initially entered into the MSMA with Shaw Maintenance, Inc., which later became Aptim. (Doc. 117-2, ¶ 3; Doc. 131-1, ¶ 3).

[2] The Court deems Plaintiff's Additional Statement of Facts in Support of her Opposition admitted pursuant to Local Civil Rule 56. (*See* Doc. 131-1, ¶¶ 21–41). Local Civil Rule 56(c) permits the party opposing summary judgment to file a separately titled section of additional facts along with its Opposing Statement of Material Facts. Here, Plaintiff did so.

Local Civil Rule 56(d) then requires the party replying to the Opposition to file a Reply Statement of Material Facts. Here, Aptim failed to do so. Rule 56(f) dictates that the Reply Statement "*shall* admit, deny or qualify such additional facts by reference to the numbered paragraphs of the opposing party's statement of material facts and unless a fact is admitted,

### B. Maintenance at Stupp's Baton Rouge Facility

At the time of the accident, Stupp had its own maintenance department in the Baton Rouge facility. (Doc. 117-2, ¶ 6; Doc. 131-1, ¶ 6). Larry Sherman was Stupp's Director of Maintenance. (*Id.*). Sherman determined which maintenance tasks needed to be performed and in what priority. (Doc. 117-2, ¶ 10; Doc. 131-1, ¶ 10).

Stupp contracted with Aptim to supplement Stupp's maintenance personnel. (Doc. 117-2, ¶ 7; Doc. 131-1, ¶ 7). Richard Housley, an Aptim employee, acted as a "go-between" between Stupp's maintenance supervisors and his Stupp maintenance crew. (Doc. 117-2, ¶ 11; Doc. 131-1, ¶ 11). Sherman supervised Housley. (Doc. 117-2, ¶ 9; Doc. 131-1, ¶ 9).

Stupp had four weekday maintenance crews comprised of approximately ten Stupp employees in each crew. (Doc. 117-2, ¶ 8; Doc. 131-1, ¶ 8). Three of the weekday crews were supervised by Stupp supervisors and one weekday crew was supervised by Housley, Aptim supervisor. (*Id.*). A nighttime crew comprised of Aptim employees also serviced Stupp's facility. (Doc. 117-2, ¶ 13; Doc. 131-1, ¶ 13).

---

shall support each denial or qualification by a record citation as required by subsection (f) of this rule." (emphasis added). Rule 56(f) further dictates that ***"[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."***

Aptim failed to properly controvert Plaintiff's Additional Statement of Facts in Support of her Opposition. (*See* Doc. 131-1, ¶¶ 21–41). The Court has repeatedly warned that its Local Rules carry the force of law, that parties appearing before the Court are charged with knowledge of its Local Rules, and that a party that "fails to comply with the Local Rules does so at his own peril." *Combs v. Exxon Mobil Corp.*, No. 18-cv-00459, 2020 WL 5121362, at *2 (M.D. La. Aug. 31, 2020). Accordingly, Plaintiff's Additional Statement of Facts in Support of her Opposition are deemed admitted. (*See* Doc. 131-1, ¶¶ 21–41).

3

### C. Decedent's Employment with Stupp

Decedent was employed by Stupp as a SCO operator. (Doc. 117-2, ¶ 1; Doc. 131-1, ¶ 1). On the date of the accident, Decedent had been a SCO operator for nine days. (*Id.*).

### D. The Stationary Cut-Off Machine

The SCO is a massive piece of machinery used to cut industrial pipes once they have been created. (Doc. 131-1, ¶ 22). A series of rollers that form a conveyor mechanism is used to bring the pipe and feed it into the SCO for the pipe-cutting process. (*Id.* at ¶ 23). Installed along the conveyors are yellow proximity sensors, called "landmines." (*Id.* at ¶ 24). The landmines are safety features designed to detect and alert the SCO operator about the presence of the incoming pipe. (*Id.* at ¶ 25). Once the pipe hits the landmine, the conveyor system loses power—requiring the SCO operator to either restart the drive or jog the pipe using the control panel located on the side of the SCO machine. (*Id.* at ¶ 26).

Aptim serviced the SCO machine, its relevant parts, and the landmine sensors. (*Id.* at ¶¶ 33–34). A functional landmine sensor would have: (1) detected the pipe's presence and alerted Decedent about it; (2) stopped the pipe by shutting down the conveyor; and (3) required Decedent to use the control panel located on the side of the SCO machine to restart it, meaning that Decedent would have to relocate from the front of the SCO machine—where he was subject to being crushed by the pipe—to the side of the machine, where such a danger did not exist. (*Id.* at ¶¶ 36–37). Aptim knew that the landmines could stop the movement of the pipe on the conveyor. (*Id.* at ¶ 35).

4

But the landmine sensor was not functional on the day of the incident. (*Id.* at ¶ 38). After walking around Stupp's facility, OSHA's certified safety and health official (CSHO) "observed that the safety switch and proximity sensor was not hooked up/plugged in to a power source." (*Id.*). That is, the SCO conveyor was "equipped with sensors that were not working and wasn't plugged into a power source at the time of the incident." (*Id.*). According to OSHA, this was a contributing factor of the incident. (*Id.* at ¶ 39).

Aptim inspected the very conveyor where the landmine sensors are located. (*Id.* at ¶ 30). Housley confirmed that he could and was supposed to report an issue even if such an issue was something other than what he was tasked to do. (*Id.* at ¶ 31).

Aptim now moves for summary judgment, arguing that Plaintiff has failed to identify evidence showing that Aptim owed a duty, that Aptim breached such duty, or that the breach was a proximate cause of Decedent's injuries. (Doc. 117-1, p. 1). Both Plaintiff and Stupp oppose Aptim's Motion, arguing that the record contains sufficient evidence to establish a genuine issue of material fact regarding Aptim's responsibilities, failures, and the role that those failures played in causing this accident. (Doc. 128; Doc. 131).

## II.  PROCEDURAL HISTORY

On March 27, 2019, Plaintiff Taylor Deggs filed suit on behalf of herself and S.L.D.D. and S.L.D.S., Plaintiff and Decedent's minor children. (Doc. 1-2, p. 8).

5

On June 20, 2019, Aptim removed the above-captioned matter to this Court, asserting diversity jurisdiction, 28 U.S.C. § 1332. (Doc. 1, p. 1–2). Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state. *Meadors v. D'Agostino*, No. CV 18-01007-BAJ-EWD, 2020 WL 1529367, at *3 (M.D. La. Mar. 30, 2020) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Thereafter, Aptim filed a Third-Party Complaint against Stupp Bros., Inc. ("Stupp"), alleging that Stupp is required to defend, indemnify, and hold Aptim harmless under a Maintenance Server Master Agreement ("MSMA"). (Doc. 42, ¶ 11).

Stupp moved to dismiss Aptim's Third-Party Complaint. (Doc. 55). The Court denied Stupp's Motion. (Doc. 87).

### III. LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to

go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

## IV. DISCUSSION

Aptim argues that Plaintiff has failed to provide evidentiary support for her allegation that Aptim was obligated to inspect the Stupp facility to identify maintenance or safety issues. (Doc. 117-1, p. 19). Aptim points to the MSMA between Stupp and Aptim, under which Aptim agreed to provide "work and services requested by [Stupp] of a maintenance, repair and/or renovation nature." (*Id.* at p. 18). Aptim contends that it was not solely responsible for maintenance at Stupp; instead, Stupp largely handled maintenance, and simply contracted with Aptim to fill maintenance shift crews with additional personnel. (*Id.*).

7

After deeming Plaintiff's Additional Statement of Facts in Support of her Opposition admitted, however, the Court finds that the record contains sufficient evidence to establish a genuine issue of material fact regarding Aptim's role in the accident. (*See* Doc. 131-1, ¶¶ 21–41). Specifically, the evidence shows that Aptim serviced the SCO machine and its relevant parts. (*Id.* at ¶¶ 33–34). Housley testified to the following:

> Q. Do you recall performing any maintenance work on the SCO machine itself?
>
> A. Yes.
>
> Q. Tell me about that.
>
> A. We were always replacing holders, cutting blades, and collars.

(Doc. 131-6, p. 6–7, 42:22–25, 43:1–2).

The evidence also shows that Aptim serviced the landmine sensors. (Doc. 131-1, ¶¶ 33–34). Housley testified that he supervised workers that would "fix landmines that go bad for whatever reason" "through the whole plant." (Doc. 131-6, p. 7–8, 43:23–25, 44:1–2). Indeed, Aptim inspected the very conveyor where the landmine sensors are located. (Doc. 131-1, ¶ 30).

Further, Housley confirmed that he could and was supposed to report an issue even if such an issue was something other than what he was tasked to do. (*Id.* at ¶ 31). Housley agreed that if he was "performing some kind of job and [saw] something else [that was] a problem, [he would] report that as well. (Doc. 131-6, p. 11, 53:10–16). Housley specifically testified:

8

Q. And if there's any kind of problem or you know, something that can be fixed, it's your responsibility as an Aptim employee to make sure Stupp's aware of it, correct?

A. Yes.

(Doc. 131-6, p. 13, 56:13–17).[3]

As noted, a functional landmine sensor would have: (1) detected the pipe's presence and alerted Decedent about it; (2) stopped the pipe by shutting down the conveyor; and (3) required Decedent to use the control panel located on the side of the SCO machine to restart it, meaning that Decedent would have to relocate from the front of the SCO machine—where he was subject to being crushed by the pipe—to the side of the machine, where such a danger did not exist. (Doc. 131-1, ¶¶ 36–37). Aptim knew that the landmines could stop the movement of the pipe on the conveyor. (*Id.* at ¶ 35).

Accordingly, the Court finds that genuine issues of material fact regarding Aptim's role in the accident, including what Aptim knew, should have known, or should have reported, preclude summary judgment. Aptim's Motion for Summary Judgment (Doc. 117) is **DENIED**.

---

[3] Stupp contends that under a comparative fault scheme, a jury may find Aptim at fault for its employees' failure to observe and report the unplugged and non-operational landmine. (Doc. 128, p. 10).

## V.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Aptim Maintenance, L.L.C.'s **Motion For Summary Judgment Per F.R.C.P. 56 (Doc. 117)** is **DENIED.**

Baton Rouge, Louisiana, this 29th day of June, 2022

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**